UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| JOE W. AGUILLARD | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. _____ |
| | § | |
| VERSUS | § | JUDGE _____ |
| | § | |
| LOUISIANA COLLEGE | § | |
| | § | MAGISTRATE JUDGE _____ |
| Defendant. | § | |
| | § | JURY TRIAL REQUESTED |
| | § | |

## COMPLAINT

The Complaint of Joe W. Aguillard with respect represents that:

### The Parties

**1.** Plaintiff Joe W. Aguillard is a resident and a citizen of Rapides Parish, Louisiana, whose permanent mailing address is 107 Garnet Street, Pineville, Louisiana, 71360 and the United States District Court for the Western District, Alexandria Division.  Plaintiff was born July 29, 1956, and is thus sixty-one (61) years old.

**2.** Defendant Louisiana College is a non-profit corporation organized and existing under the laws of the State of Louisiana with its principal office and place of business located in Pineville, Louisiana and whose mailing address is 1140 College Drive, Pineville, Louisiana, 71359.  Louisiana College is a private co-educational college of liberal arts and sciences with selected professional programs, which is operated by the Louisiana Baptist Convention, its sole member.  It is accredited by the Commission on Colleges of the Southern Association of

Colleges and Schools ("SACSCOC"). By virtue of its accreditation by SACSCOC, Louisiana College is eligible to participate in various programs authorized under Title IV of the Higher Education act [20 U.S.C. 1001, et seq.] and to receive federal funds for sponsoring and administering these programs. In addition, Louisiana College is eligible to receive and, in fact, receives funds from the Louisiana Board of Regents as reimbursement for educating Louisiana residents. La. R.S. 17:3053D. It participates in various federal education programs and receives funding from the State of Louisiana and the Federal government for various programs.

**3.** Plaintiff's claims arise under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 e, as amended, prohibiting discrimination on the grounds of his religious beliefs, his age and his physical disability, and prohibiting retaliation against Plaintiff by Defendant for engaging in protected activities and opposing Defendant's unlawful discrimination and actions hereinafter set forth. The acts taken by Defendants were pretext and in retaliation for Plaintiff's actions in opposing Defendant's unlawful actions.

## The Relevant Facts

**4.** Plaintiff became the eighth President of Louisiana College on January 18, 2005, Plaintiff served in that capacity until July 31, 2014 when, as a result of poor health, Plaintiff and the Board of Trustees of Louisiana College entered into a written employment agreement with Louisiana College effective April 15, 2014, pursuant to which Plaintiff became "President Emeritus" of Louisiana College and a fully tenured member of the Faculty at Louisiana College. A true and correct copy of the April 15, 2014 Employment Agreement is attached hereto and made a part hereof a Exhibit "A."

**5.** At all time relevant and material, Louisiana College and Brewer were familiar

with Plaintiffs' fragile health and medical conditions. Plaintiff had a major heart attack in March of 2011 and underwent quadruple by-pass surgery. In January of 2014, Plaintiff was diagnosed with Post Traumatic Stress Disorder. The Employment Agreement was an accommodation to Plaintiff's disabilities.

**6.**     The Board of Trustees of Louisiana College employed Argile Smith as "Acting President" to follow Plaintiff, a position which Smith held for approximately one (1) year. Plaintiff performed his employment duties and responsibilities successfully during the Smith Administration.

**7.**     Louisiana College subsequently employed Dr. Richard B. Brewer as its President in March of 2015. Dr. Brewer began his employment as President of Louisiana College on April 7, 2015, and continues to serve in that capacity.

**8.**     Plaintiff had no difficulty with the Brewer Administration initially. However, on or about May 3, 2015, in accordance with Louisiana College's published policies, Plaintiff filed a fear of workplace violence complaint with Dr. Michael Shamblin, Associate Vice President of Louisiana College; Dr. Brandon Bannon, Dean of Students and a leader of the Voices of Louisiana College; and, Dr. Tommy French, Chairman of the Board of Trustees, protesting the employment of Kyle Johnson by Dr. Brewer. Kyle Johnson was one of the leaders of a group that sponsored and promoted the "Calvinist" religious belief at Louisiana College and had previously threatened Plaintiff's life. Plaintiff is informed and believes, and alleges upon information and belief, that Brewer is a "Calvinist." Plaintiff is not a "Calvinist." Brewer knew at the time he hired Kyle Johnson as an employee of Louisiana College that "[t]he Calvinist didn't just want Dr. Aguillard gone, they wanted him dead."

**9.** Plaintiff met with Brewer on May 20, 2015 at Brewer's request, ostensibly to discuss Plaintiff's "Employment Agreement." Brewer told Plaintiff at this meeting that "you can't be President Emeritus, it's just not going to work." Referring to Plaintiff's contact with Dr. Michael Shamblin in connection with Kyle Johnson's employment, Brewer instructed Plaintiff to "never, under any circumstances, contact any of my vice-presidents again." Brewer further ordered Plaintiff to stop speaking to "donors" of Louisiana College.

**10.** On or about May 6, 2015, after Plaintiff filed his complaint of "fear of workplace violence", Brewer met with Ingrid Johnson, an attorney for Louisiana College, to discuss and seek advice about how to break Plaintiff's Employment Agreement.

**11.** Plaintiff is informed and believes, and alleges upon information and belief, that Brewer decided to attempt to force Plaintiff to resign his employment with Louisiana College. Brewer isolated Plaintiff and did not allow Plaintiff to participate in the usual and customary faculty functions. Brewer refused to communicate with Plaintiff with respect to his duties and responsibilities under the Employment Agreement.

**12.** In the summer of 2015, Brewer and some members of the Board of Trustees became aware of the circulation of certain public media documents, including a newspaper article, of a press conference at which Dr. Brewer had denied the veracity of the Baptist Faith and Message 2000 along with other Baptist doctrinal statements. Brewer believed that the "Anonymous Package," depicted him in a critical and unfavorable light which he attributed to Plaintiff.

**13.** On or about August 18, 2015, Brewer published and disseminated at an annual meeting of Louisiana College's faculty and then circulated nationally for the purpose of

recruiting students for Louisiana College, a public relations flier featuring a picture of Kyle Johnson and using Kyle Johnson along with other pictures of Calvinists who had bullied and harassed Plaintiff while he was serving as President of Louisiana College.

**14.** On September, 28, 2015, Plaintiff received a telephone call from one Don Benton Connor who represented that he was "in law enforcement" and stated that he had been hired by Brewer to investigate Plaintiff and that he wanted to meet with Plaintiff immediately at Plaintiff's office. Plaintiff agreed to meet Connor at Plaintiff's office in the Lyn Alumni House. During the meeting, Plaintiff telephoned Brewer who confirmed that he had hired Connor to conduct an investigation. Brewer told Plaintiff to do whatever Connor says, "he speaks for me." Because of the suspicious circumstances, Plaintiff decided to take a friend, Rev. Jerry Dark, with him to the meeting.

**15.** At the meeting, Connor, who appeared to be armed with a hand-gun, represented that he "was in law enforcement," stated that "this is a Catholic thing!" and demanded that Plaintiff immediately resign his position at Louisiana College because of religious issues. Connor threatened to "ruin" Plaintiff's career if he did not resign and stated if he did not resign that night for undisclosed reasons, "your career will go down the toilet and your family will remain exposed." Connor followed Plaintiff to his (Plaintiff's) truck and physically took possession of Plaintiff's computer located in his truck over Plaintiff's objection, slamming the top of one of the computers on Plaintiff's hand.

**16.** Plaintiff owned one (1) of the computers as his personal property and the other computer was issued to him by Louisiana College. Plaintiff had personal and confidential information stored in both computers, including, e-mail communications with his attorneys,

financial information and medical records.  Both computers were "password protected."  Plaintiff had a reasonable expectation of privacy with respect to the information stored on both computers.

    **17.**    Plaintiff is informed and believes, and alleges upon information and belief, that Louisiana College, "hacked" both computers and unlawfully and illegally obtained confidential information and data stored on the computers, including communications with Plaintiff's attorneys.

    **18.**    Following the traumatic meeting with Connor on September 28, 2015, Plaintiff, on the advice and recommendations of his medical team, was admitted to the River Oaks Hospital Trauma Center for treatment and observation because of acute PTSD symptoms and the high risk of a second heart attack and/or stroke resulting from his confrontation with Connor.  Plaintiff remained in the hospital for three (3) weeks.

    **19.**    After being released from River Oaks Hospital Trauma Center, Brewer continued to have Plaintiff followed, stalked and to have Plaintiff's whereabouts reported to him.  Brewer met with Dr. Carmacia Smith-Ross, the Dean of the School of Education, who was Plaintiff's supervisor, and told her that he (Brewer) was having Plaintiff stalked and his every move followed and reported to him.

    **20.**    On December 2, 2015, Brewer met with Dr. Carmacia Smith-Ross and attempted to obtain statements from her to the effect that Plaintiff was too ill to work, that Plaintiff had not been teaching his classes appropriately, that Plaintiff had not attended meetings with her as required and that, because of Plaintiff's disabilities (coronary artery disease and PTSD), Plaintiff could not perform his job duties and responsibilities.  Dean Smith-Ross refused to make or agree to any such statements.  Subsequently, on January 12, 2016, Brewer and Cheryl Clark, the acting

Dean and Vice-President of Academic Affairs, fired Dr. Smith-Ross, presumably because she refused to cooperate with Brewer and Clark in their efforts to obtain evidence that Plaintiff had breached his Employment Agreement.  Brewer informed Dr. Smith-Ross that he (Brewer) did not have to and would not give her a reason for her dismissal.

**21.**	By letter dated January 22, 2016, a true and correct copy of which is attached hereto as Exhibit "B," Cheryl Clark, Acting Vice-President and Dean of Academic Affairs, acting at Brewer's direction, notified Plaintiff that Louisiana College considered Plaintiff's employment to be "at will" and that Louisiana College "was entitled to dismiss [him] at any time and for any reason and was not obligated to show cause" for his dismissal.  She was proposing Plaintiff's dismissal from his employment by Louisiana College based upon the reasons stated therein, including the fact that Plaintiff had assisted Dr. Carol Spears in filing a "whistleblower complaint."

**22.**	By email dated January 29, 2016, a true and correct copy of which is attached hereto as Exhibit "C," Brewer notified Plaintiff that he (Brewer) was placing Plaintiff on "administrative leave" and that he was relieving Plaintiff of all of his duties and responsibilities as "President Emeritus" and that he (Brewer) would re-assign all of Plaintiff's classes.

**23.**	On February 9, 2016, Plaintiff filed a Whistleblower Complaint with the Board of Trustees reporting that Brewer had retaliated against Plaintiff for engaging in protected activities and for opposing Louisiana College's unlawful discrimination and actions.

**24.**	Plaintiff's employment agreement (Exhibit "A"), by its express terms [¶12], required arbitration of any dispute with respect to Plaintiff's employment.

**25.**	Louisiana College and Brewer knew at the time the letter dated January 22, 2016

[Ex. "C"], was written that the Board of Trustees had expressly agreed in a resolution adopted on December 16, 2014, its acceptance of an Act of Donation from an anonymous donor to modify and amend the Plaintiff's Employment Agreement to provide that Plaintiff would remain President Emeritus for at least five (5) years.

**26.** At the inception of the Employment Agreement, Louisiana College gave Plaintiff an office in the Lyn Alumni House. Plaintiff was given a key to the lock on the door to his office and a key to the locks on the doors to Lyn Alumni House. Plaintiff had a legitimate expectation of privacy in his office.

**27.** Without any prior notice to Plaintiff, Louisiana College, acting through Brewer, changed the locks on Plaintiff's office and to the Lyn Alumni House on February 17, 2016. Plaintiff was not given a key to the new locks and thus Plaintiff was denied access to his office and his property stored in his office.

**28.** As permitted by Cheryl Clark's letter dated January 22, 2016, Plaintiff requested a hearing before the Faculty Affairs Advisory Committee ("FAAC") and a hearing was conducted on February 23, 2016. The FAAC recommended that Plaintiff be dismissed from his employment. By letter dated March 16, 2016, a copy of which is attached hereto as Exhibit "D," Brewer terminated Plaintiff's employment effective March 31, 2016. Plaintiff appealed Brewer's decision to the Executive Committee and then to the Board of Trustees, all to no avail.

**29.** Louisiana College stopped payment of all compensation to Plaintiff under the Employment Agreement on March 31, 2016.

**30.** Defendant's alleged grounds for terminating Plaintiff as President Emeritus and as a fully tenured faculty member is and was mere pretext. Defendant retaliated against Plaintiff for

Plaintiff's attempt to protect his employment rights from unlawful discrimination on the grounds of religious beliefs and Plaintiff's disability and Plaintiff's opposition to Defendant's discriminatory practices.

**31.** Plaintiff filed a "Charge of Discrimination" with the EEOC and the Louisiana Commission on Human Rights on or about April 1, 2016, alleging that Louisiana College had discriminated against him because of his "disability, religion, Southern Baptist, and in retaliation for opposing illegal practices in violation of the American With Disabilities Act, as amended, and Title VII of the Civil Rights Act of 1984." This included, but is not limited to, the cyber-bullying, threats on his life.   A copy of this "Charge of Discrimination" is attached hereto as Exhibit "E."

**32.** Plaintiff subsequently filed another "Charge of Retaliation/Discrimination" against Louisiana College on July 8, 2016, claiming that Louisiana College had retaliated against him by making false, defamatory and retaliatory statements about him.  A copy of this "Charge of Discrimination" is attached hereto as Exhibit "F."

**33.**  The EEOC issued a "Right to Sue" letter on both of the charges referred to hereinabove under date of September 28, 2017, a copy of each of which is attached hereto and filed herewith as Exhibit "G-1" and Exhibit G-2," respectively.

**34.** Plaintiffs requests a jury trial of all issues.

WHEREFORE, Plaintiff prays that Defendant Louisiana College be duly served with a copy of this Complaint and duly summoned to appear and answer or otherwise respond to this Complaint and that, after due proceedings had, Plaintiff be awarded all of the relief to which it is legally or equitably entitled, including, but without being limited to, back-pay and front- pay.

Plaintiff further prays for all orders or decrees necessary or proper in the premises and for full general and equitable relief, including his reasonable attorney's fees and all costs.

Respectfully submitted,

THE PESNELL LAW FIRM
(A Professional Law Corporation)

*s/Billy R. Pesnell*
By: _____
Billy R. Pesnell
Louisiana State Bar Roll No. 10533
J. Whitney Pesnell
Louisiana State Bar Roll No. 15035
W. Alan Pesnell
Louisiana State Bar Roll No. 23249

H.C. Beck Building, Suite 1100
400 Travis Street (Zip: 71101)
Post Office Box 1794
Shreveport, Louisiana 71166-1794
Telephone: (318) 226-5577
Telecopy: (318) 226-5578

-- Attorneys for Plaintiff Joe W. Aguillard.