EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>461-2016-00794 |
|---|---|---|

Louisiana Commission On Human Rights and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Joe W. Aguillard | (318) 641-1210 | 07-29-1956 |

Street Address: 107 Garnet Street, Pineville, LA 71360

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| LOUISIANA COLLEGE | 15 - 100 | (318) 487-7401 |

Street Address: 1140 College Drive, Pineville, LA 71359

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 05-03-2015 Latest: 03-31-2016
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was diagnosed with a medical condition in early 2014 as a result of life-threatening events that took place at work while I worked in the capacity of President. I was accommodated by the Board of Trustees with a move to the position of President Emeritus for health reasons and I continued functioning well and performing all of my duties. A new President (Rick Brewer) was put in place a year later and, within 3 weeks after he arrived, he began a series of actions to dismiss me. On May 3, 2015, I reported a fear of workplace violence/hostile environment regarding my disability after Brewer hired a man who threatened my life a year earlier. From that point on, Brewer harassed me, threatened me, stated publicly that my complaint about my disability was "silly," hired a Private Detective who used criminal acts (extortion, armed robbery/assault and the like) to intimidate me, made fun of my disability, had my locks on my office door changed without giving me a key, relieved me of my job responsibilities, placed me on leave and terminated my employment effective March 31, 2016.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: Apr 01, 2016
Charging Party Signature: *Joe W. Aguillard*

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EXHIBIT E

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 461-2016-00794 |

Louisiana Commission On Human Rights and EEOC
*State or local Agency, if any*

No reason was given for this treatment.

I believe that I have been discriminated against because of my disability, religion, Southern Baptist, and in retaliation for opposing illegal practices in violation of the Americans With Disabilities Act, as amended, and Title VII of the Civil Rights Act of 1964, as amended. I was hospitalized for 3 weeks as a result of the hostile work environment and the action I had to take on my own to address certain issues. The Dean of Education was called into a meeting and attempts were made to coerce her into agreeing that I was too ill to work and that my work performance was substandard but she refused to assist the college and she was subsequently dismissed. Also, I believe that my opposition to Calvinistic views contributed to my discharge.

---

| | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |
| Apr 01, 2016 *[signature]*<br>Date   Charging Party Signature | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

na College                                              Office of President Emeritus



LOUISIANA
C O L L E G E

August 3, 2017

Uma Kandan, Enforcement Manager
U.S. Equal Employment Opportunity Commission
500 Poydras St., Room 809
New Orleans Field Office
New Orleans, Louisiana 70130

To Whom It May Concern,

I am responding to the email from Ms. Darensburg, my case Investigator who has been tremendous in her care for my case and frankly for my life. Being attacked relentlessly by an employer for one's age, disability, and religion is traumatic.

I understand that I am to provide a "separate request for a Right to Sue which is needed on the above-referenced charge of discrimination (461-2016-00988)."

I am providing same via this document.

In addition, please attach and make this a part of my report to you on July 25, 2017 and/or a part of (461-2016-00988) to document CONTINUED RETALIATION FOR FILING this whistleblower complaint.

1. RETALIATION:

Today, August 3, 2017, I was served with a defamation law suit because I filed a whistleblower complaint and reported discrimination and retaliation practices against me to EEOC, specifically for my religion, disability, and age. (Attachment 1)

The suit actually cites my confidential official whistleblower complaint to EEOC seven (7) different times, as the reason for suing me in order to frighten me to drop my EEOC complaint. The retaliation is incessant. The suit which quotes from my EEOC whistleblower complaint has been publicly posted on area television stations and web sites in order to frighten and damage me.

In addition, I am providing documentation of a breach of my contract signed by the chairman of the Board of Trustees. First, I am including a confidential partial transcript of the threats made against me by the assailant who assaulted me on September 28, 2015. That assault began the historical record of my whistleblower complaint to you, EEOC. During the assault which was instigated in order to force me to resign for religious, disability and age reasons; the assailant hired by the College President told me that among other things, his religion of Catholicism, and mine conflicted; and henceforth, the template for the mandates of the attack would be governed by his Catholic rules.

He stated, *"I'm Catholic! ...and this is a Catholic thing!"* I was assaulted by this strange man at night at my College office who was telling me that his mandate for me to resign was based on his Roman Catholicism beliefs and that I must adhere to and comply with his religious position and either "resign" or be fired. No hearing, no meeting with my accuser(s), no evidence of what I am accused of, no explanation of what I am supposed to have done, threatened with being sued, fired, ruined, embarrassed, and even hurt- the opposite of the contractual guarantees I had as President Emeritus and Tenured Full Professor. I was frightened to death and I still am by a stranger using Catholicism as a weapon. I thought that it was a "hate based" attack by a religious lunatic. Now I am wondering if my earthly employer is **the Pope or the Board of Trustees!**

Bizarrely, this is frightening because Louisiana College is a BAPTIST COLLEGE whose mission and hiring practices require adherence to the *Baptist Faith and Message 2000* of all employees, especially faculty; not Roman Catholicism. Also, because my position required that I be Southern Baptist and I was originally required to affirm and sign the *Baptist Faith and Message 2000*, the act of hiring a stranger who said he was there specifically as a *"Catholic" and "in law enforcement"*, "who lured me to my office at night" on a mysterious pretense, and once there informed me that he was forcing me to adhere to his personal Roman Catholic practices and beliefs which he said, "*God forgave me because I did everything as a human possible to fix my wrongs."* I don't know if this is the Roman Catholic Church doctrine or his, but I refused to be forced into a resignation for unknown reasons based on this stranger's Catholic doctrine of "forgiveness". Baptists believe that we are forgiven of our sins by the Grace of Jesus alone and not by anything we have done or could do. I am positive that it is the quintessential example of violation of EEOC's discrimination and retaliation policies.

And now, as of today August 3, 2017, the College is actually suing **ME** for filing a whistleblower complaint to you, EEOC, and for not adhering to Roman Catholic doctrinal requirements that require that I resign or be fired because now, *"this is a Catholic thing"*. Upon further investigation by your office, the evidence will also prove that the Catholic stranger also made threats to *"your [my] family"* saying this exposure he had created would not stop against them, my **"family"** until I resigned.

The contractual agreement between the Board of Trustees and me which was memorialized on April 15, 2014, requires formal communications between us to occur as defined *in Section 9, of the 2014 Employment Agreement,* and *Section 2.11 of the Faculty Handbook,* not at the whim or caprice of a "Catholic ... Law Enforcement" stranger who spontaneously required my adherence to my contractual agreement to be changed to a template supporting of and within the boundaries of Catholicism when I was instructed that *"this is a Catholic thing!"* There is no other plausible deduction other that what I believed him to be asserting. The mission of Louisiana College is in an antithetical position to that of Roman Catholicism and I am unable to comport with the Louisiana College Baptist mission and the "Catholic Law Enforcement" person whom I had never met. Also, I was instructed by the stranger to make an immediate employment decision in direct contradiction to the *Faculty Handbook 2.11 Severance* as well as in complete disregard to the due process rights guaranteed by my tenure status as a professor; and instead, to either *"resign or be fired"*. These actions have permanently breached my contract in my position of President Emeritus and Tenured Full Professor, and for illegal reasons of discrimination for my disability, age, and religion.

Not only was the worldview through which I was mandated to view my immediate employment decisions under threat of injury in contradiction to the worldview of Louisiana College; but, the entire process stripped me of any guaranteed due process I owned as stated in my signed and published 2014 Employment Agreement as both President Emeritus and Tenured Full Professor.

Be it hereby known that as President Emeritus and Tenured Professor, *I WILL NEVER* bow down and worship Roman Catholicism and I will never be bullied into *ANY* actions under the template of *"this is a Catholic thing"* by a Catholic stranger threatening me and my family in the dark of night on behalf of my employer and/or a Government agency! We, my family and I, stand on the inerrant and inspired Word of God, as explicated by *The Baptist Faith and Message 2000;* I do not adhere to nor will I be intimidated to resign based on Roman Catholic doctrinal principles and threats. No other contracted employee has been subjected to these illegal and contractual breaches. I am not disparaging his religion nor any other persons; but, I will not be governed by it.

I will go bankrupt, I will go to jail, I will be fired, and I will endure whatever else they may throw at me; but, I will not bow down to Roman Catholicism, Calvinism, Islamism, Hinduism, or any other **"ism"!** I am a Southern Baptist minister of the Gospel of Jesus Christ, ordained by the First Baptist Church of Basile, vetted for my beliefs by Baptist Patriarchs like Dr. Leon Hyatt, Br. Carlton Vance, Dr. Tommy French, and Dr. Joe Kite. I was licensed to preach by the membership of Kelly Baptist Church. I am the President Emeritus and Tenured Full Professor of a Southern Baptist College with employment positions that required me to adhere to a specific set of doctrinal tenets. I am a Christian who is Baptist and like the Apostle Paul, I hereby assert my Creator granted unalienable rights!

Finally, the stranger claimed and purported to me and my witness that he was currently in law enforcement when he stated, **"I am** forty years **in law enforcement!"** He did not say that he once was, used to be, or make any other reference which was in the past tense. He bragged that he was currently **"in law enforcement"**. From a legal standpoint, at its core, the concept of law enforcement consists of just that: enforcing laws. Therefore, this stranger was attacking me to enforce laws, at least as he purported to a frightened College professor, who he knew had Advanced Coronary Artery Disease and PTSD, under the cloak of night. He actually watched as I had to take Nitro Glycerin tablets for Angina as he threatened me; but, he persisted anyway.

Since this assailant was either currently/presently **"in law enforcement"** as he asserted or he is a charlatan: lying and impersonating an officer which is against the law as well; but, both positions are illegal. If a law enforcement officer was using the arm of government for which he was employed to threaten me to resign or be ruined and fired under the template of Roman Catholicism, then the Constitutional breaches are historical! Either one or the other is true, and both are illegal. Additionally, **during the attack**, when I called the College president on his cell phone in fear for my safety, he stated, "do what he says, he speaks for me". **Upon that statement, the Louisiana College President** conveyed that the stranger's assertions concerning the Catholic template of the meeting were his as well, and this actually was, in fact, an institutional **"Catholic thing"**. He said that I must **"do as he says, he speaks for me"**. No logical mind can conclude that given all of this documented information and evidence, that this attack was anything but an illegal set of nefarious acts.

For instance, what if he had declared, **"I'm Muslim and this is a Muslim thing!"** What would be one's reaction? It shouldn't matter what religion I was instructed to adhere to, it is morally, ethically, and legally wrong! Will their next paradigm require me to fit into or be subject to Allah? **It is \*"a distinction without a difference"!**

**Pay For Hire**

The man who claimed to be a "Catholic in Law Enforcement" was paid to break the law and extort, assault, and other nefarious acts by the president of the College. Thousands of dollars went into the pocket of this "pay for hire" Catholic man.

Again, I will not be frightened, threatened, or continually intimidated by the College president donning the cloak of the Roman Catholic Church or the Government under the auspices of "law enforcement" to fall in line under institutional or governmental religious doctrine which is antithetical to mine, no matter what their religious denominational doctrinal beliefs happen to be.

*Article XVII. Religious Liberty,* of the *Baptist Faith and Message 2000* which I not only affirm but I am contracted to uphold and live states in part,

> *"The state has no right to impose penalties for religious opinions of any kind. The state has no right o impose taxes for support of any form of religion. A free church in a free state is the Christian ideal, and this implies the right of free and unhindered access to God on the part of all men, and the right to form and propagate opinions in the sphere of religion without interference by the civil power."*

Therefore, be it known that Louisiana College cannot force me into Roman Catholic doctrinal confessions or acts such as resignation, and neither can the Government at the behest of a man claiming to be the arm of Government force upon me his or their religious convictions through threats and demands as directed by any Board, my employer, or the College President. The last time I checked, **the First Amendment** was still in effect.

## ARBITRARY AND CAPRICIOUS

Why was I, a tenured professor, treated differently from all other tenured professors? No other professors have been set up by Rick Brewer to be accosted by a man "in law enforcement", barking that he was **"Catholic"**, that **"this is a Catholic thing"**, and that under this template of circumstances that they must resign or be fired and there was NO time to think, just resign. And, all under the authority of the president.

No other professor in the history of Louisiana College has been extorted, assaulted, and illegally and immorally threatened by the president of the College as was I. There is NO other example of such an egregious example of Arbitrary and Capricious treatment.

Again, thank you for your help and protection. Please help me as soon as possible to stop the discrimination and retaliation. What do I do next?

Warmly,

Joe Aguillard, Ed.D.
President Emeritus
Pastor, Kelly Baptist Church

*Elizabeth Southall, Landon C. Davis III, & Isaac A. McBeth, *A Distinction Without a Difference? An Examination of the Legal and Ethical Difference Between Asset Protection and Fraudulent Transfers Under Virginia Law*, 47 U. Rich. L. Rev. 381 (2012).

ATTACHMENTS:

1. SUIT FILED AGAINST DR. AGUILLARD FOR REPORTING TO EEOC
2. RELIGIOUS (CATHOLIC) MANDATES MADE AGAINST DR. AGUILLARD TO COERCE HIM INTO RESIGNING (SEPTEMBER 28, 2015 TRANSCRIPT)
3. REPORT TO PINEVILLE POLICE CHIEF FOR CONTINUED CRIMES AGAINST DR. AGUILLARD SPECIFICALLY FOR PURPOSES OF RETALIATION

cc:

    Mr. Koby Boyett, attorney

Ministerial Advisors:

    Dr. Tommy French, Former President of the Louisiana Baptist Convention, Vice President of the Southern Baptist Convention, Chairman of the Board of New Orleans Baptist Seminary and Chairman of the Louisiana College Board of Trustees

    Br. Carlton Vance, Former Louisiana College Board of Trustees member and Louisiana Baptist and Southern Baptist Leader

    Dr. Leon Hyatt, Former President of the Louisiana Baptist Convention, Louisiana College Board of Trustees, Southern Baptist Foreign Mission Board, and Louisiana and Southern Baptist Leader