UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| JOE W. AGUILLARD, | * | CIVIL ACTION NO. 1:17-CV-01671 |
| | * | |
| Plaintiff | * | |
| | * | |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| | * | |
| LOUISIANA COLLEGE, | * | |
| | * | |
| Defendant | * | MAGISTRATE JUDGE HORNSBY |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Of Counsel:

Billy R. Pesnell
Louisiana Bar Roll No. 10533
J. Whitney Pesnell
Louisiana Bar Roll No. 15035
W. Alan Pesnell
Louisiana Bar Roll No. 23249
The Pesnell Law Firm, A P.L.C.
H.C. Beck Building, Suite 1100
400 Travis Street
Shreveport, Louisiana  71101
Post Office Box 1794
Shreveport, Louisiana 71166-1794
Telephone:  (318) 226-5577
Telecopy:  (318) 226-5578

--       Attorneys For Plaintiff, Joe W. Aguillard.

**TABLE OF CONTENTS**

Page

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-11

I.      The termination of Plaintiff's employment cannot be
        justified by the "ministerial exception" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-5

        (a)     Plaintiff was not employed by Louisiana College
                as a "minister" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3-5

        (b)     Defendant is not a "Church" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

2.      Plaintiff's claims based upon religious discrimination and
        retaliation for religious discrimination are not barred by the
        "ecclesiastical abstention" doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5-9

3.      There are genuine issues of material fact as to whether
        Louisiana College is a "religious" educational institution . . . . . . . . . . . . . . . . . . . .  9-11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Certificate  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

ATTACHMENTS:

Affidavit of Billy R. Pesnell dated September 14, 2018

Affidavit of Joe W. Aguillard dated September 14, 2018

Affidavit of Carolyn D. Spears dated September 10, 2018

i

## INDEX OF AUTHORITIES

Pages

### Cases

EEOC v. Mississippi College, 626 F.2d 477, 485 (5th Cir. 1980),
*cert. denied* 453 U.S. 912, 101 S.Ct. 3143 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

E.E.O.C. v. Kamehameha Schools/Bishop Estate,
990 F.2d 458 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fairfield Pentecostal Church v. Johnson,
170 So.3d 357 (La. App. 3rd Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Finn v. Kent Security Services, Inc.,
961 F.Supp.2d 1293 (S.D. Fla.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fluker Community Church v. Hitchen,
419 So.2d 445, 447 (La. 1982) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hosanna-Tabor Evangelical Church and School v. E.E.O.C.,
565 U.S. 171, 132 S.Ct. 694 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Joshua Bonadona v. Louisiana College and Rick Brewer,
Civil Action No. 1:18-cv-224, USDC, Western District of LA,
Alexandria Division . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kant v. Lexington Theological Seminary, 2012-SC-000502-DG,
2014 Ky. Lexis 160 (Ky. April 17, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

LeBlanc v. Davis, 432 So.2d 239, 241 (La. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Louisiana College v. Sebelius, 38 F.Supp.3d 766 (W.D. La. 2014) . . . . . . . . . . . . . . . . . . . . 10

Quinlan v. Sugar-Gold, 219 So.3d 1173 (La. App. 2nd Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . 7

Wimberly v. Louisiana College, 124 So.3d 1212, *cert. denied*
137 So.3d 1215 (La. 2014) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

### Statutes/Miscellaneous Citations

Article 1, Section 8 of the Louisiana Constitution of 1974 . . . . . . . . . . . . . . . . . . . . . . . . . . 5

First Amendment to the U.S. Constitution  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Louisiana Constitution of 1974  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

La. R.S. 12:207(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La. R.S. 12:201, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

Title VII, Section 702(a) [42 U.S.C. §2000e-1(a)]  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9

Title VII, Section 703(e)(2) [42 U.S.C. §2000e-1(a)]  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| JOE W. AGUILLARD, | * | CIVIL ACTION NO. 1:17-CV-01671 |
| | * | |
| Plaintiff | * | |
| | * | |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| | * | |
| LOUISIANA COLLEGE, | * | |
| | * | |
| Defendant | * | MAGISTRATE JUDGE HORNSBY |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Introduction

Defendant Louisiana College has filed a Motion for Partial Summary Judgment in the

captioned action, claiming that it is exempt from the provisions of Sections 702(a) (42 U.S.C.

§2000e-1(a)[1] and 703(e)(2) (42 U.S.C. §2000e-1(a)[2] of Title VII.[3]  As will more fully appear

---

[1] Section 702(a) provides that:

   "This subchapter shall not apply to an employer with respect to the employment
of aliens outside any State, or to a religious corporation, association, educational
institution, or society with respect to the employment of individuals of a particular
religion to perform work connected with the carrying on by such corporation, association,
educational institution, or society of its activities."

[2] Section 702(e)(2) provides that:

"it shall not be an unlawful employment practice for a school, college, university, or other
educational institution or institution of learning to hire and employ employees of a
particular religion if such school, college, university, or other educational institution or

from the statements of material facts and affidavits submitted by the parties, there are genuine

issues of material fact which bar summary judgment.  Very little discovery has been done on the

status of Louisiana College as a "religious" educational institution.  As a result, Louisiana

College's Motion for Partial Summary Judgment is premature.  As Louisiana College admits

(Memo., p. 6), Fifth Circuit jurisprudence on these issues are not developed.

The sections are rooted in the provisions of the First Amendment to the Constitution

guaranteeing freedom of religion and prohibiting the establishment of a religion.[4]  The Courts

have generally analyzed these provisions and the relevant considerations under the so-called (1)

"ministerial exception" and (2) the "Ecclesiastical abstention" doctrine.  We will consider each

of these points in the order stated.

**1.**      **The termination of Plaintiff's employment cannot be justified by the "ministerial exception."**

In order to invoke the "ministerial exception," Louisiana College must show (1) that the

---

institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

[3]Louisiana College is no stranger to Title VII actions.  See, e.g., Joshua Bonadona v. Louisiana College and Rick Brewer, Civil Action No. 1:18-cv-224, in this Court.

[4] The First Amendment to the U.S. Constitution provides that:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The Louisiana Constitution of 1974, as amended.

institution in question is a church; and (2) that Plaintiff is a minister of that church.  See

Wimberly v. Louisiana College, 124 So.3d 1212, *cert. denied* 137 So.3d 1215 (La. 2014); EEOC

v. Mississippi College, 626 F.2d 477, 485 (5ᵗʰ Cir. 1980), *cert. denied* 453 U.S. 912, 101 S.Ct.

3143 (1981).

      (a)     Plaintiff was not employed by Louisiana College as a "minister."

The Supreme Court of the United States considered the "ministerial exception" for the

first time in Hosanna-Tabor Evangelical Church and School v. E.E.O.C., 565 U.S. 171, 132 S.Ct.

694 (2012).  As the Court said there (*id*. at 705-706):

> "Until today, we have not had occasion to consider whether this freedom
> of a religious organization to select its ministers is implicated by a suit alleging
> discrimination in employment. The Courts of Appeals, in contrast, have had
> extensive experience with this issue. Since the passage of Title VII of the Civil
> Rights Act of 1964, 42 U. S. C. §2000e et seq., and other employment
> discrimination laws, the Courts of Appeals have uniformly recognized the
> existence of a "ministerial exception," grounded in the First Amendment, that
> precludes application of such legislation to claims concerning the employment
> relationship between a religious institution and its ministers
>
> "We agree that there is such a ministerial exception. The members of a
> religious group put their faith in the hands of their ministers. Requiring a church
> to accept or retain an unwanted minister, or punishing a church for failing to do
> so, intrudes upon more than a mere employment decision. Such action interferes
> with the internal governance of the church, depriving the church of control over
> the selection of those who will personify its beliefs. By imposing an unwanted
> minister, the state infringes the Free Exercise Clause, which protects a religious
> group's right to shape its own faith and mission through its appointments.
> According the state the power to determine which individuals will minister to the
> faithful also violates the Establishment Clause, which prohibits government
> involvement in such ecclesiastical decisions."

And further (*id*. at 707):

> "Having concluded that there is a ministerial exception grounded in the
> Religion Clauses of the First Amendment, we consider whether the exception
> applies in this case. We hold that it does.

"Every Court of Appeals to have considered the question has concluded that the ministerial exception is not limited to the head of a religious congregation, and we agree. ***We are reluctant, however, to adopt a rigid formula for deciding when an employee qualifies as a minister***. It is enough for us to conclude, in this our first case involving the ministerial exception, that the exception covers Perich, given all the circumstances of her employment." (Emphasis added.)

The Supreme Court in Hosanna-Tabor (*id*. at 708) made it clear, however, that in

determining whether an employee was a "minister" required a consideration of the "formal title

given by the Church, the substance reflected by that title, [his] own use of that title, and the

important religious functions [he] performed for the Church. ..."

Conspicuously, Louisiana College has presented *no* evidence whatsoever showing that

Dr. Aguillard was employed by it as a "minister."  It is impossible to believe that all professors at

Louisiana College are "ministers."  As the Kentucky Supreme Court in Kant v. Lexington

Theological Seminary, 2012-SC-000502-DG, 2014 Ky. Lexis 160 (Ky. April 17, 2014):

"... We reject a categorical application of the ministerial exception that would treat all seminary professors as ministers under the law. Each case must be reviewed on the totality of its facts as we outlined in Kirby. Kant, as opposed to Kirby, did not participate in significant religious functions, proselytize, or espouse the tenets of the faith on behalf of his religious institutional employer. The trial court, consequently, erred by granting summary judgment because questions of material fact exist regarding the contractual claims asserted by Kant, so we remand the case to the trial court for further proceedings."

Relying upon Hosanna-Tabor, the Kentucky Supreme Court concluded that:

"... The primary focus under the law is on the nature of the particular employee's work for the religious institution. Here, Kant's work was chiefly secular. And the nature of Kant's work, rather than his personal belief system, serves as the basis for the determination that Kant is not a minister. Nonetheless, an employee's personal belief system may be considered."

Dr. Aguillard's affidavit clearly shows that he was not employed as a "minister" under his

employment agreement with Louisiana College.  Aguillard Aff., ¶4.  He was assigned to teach –

and only taught – secular courses on teaching.  He did not participate in nor was he invited to

participate in any religious programs offered or sponsored by Louisiana College.[5]  He was not

even invited or allowed to participate with faculty at graduation ceremonies.  Dr. Aguillard was

essentially "isolated" from the faculty and all religious functions, after he filed his "workplace

violence" complaint.

     (b)     <u>Defendant is not a "Church</u>."

Louisiana College is not a church.  As the Fifth Circuit held in Mississippi College (*id*. at

485):

> "... The College is not a church. The College's faculty and staff do not function as
> ministers. The faculty members are not intermediaries between a church and its
> congregation. They neither attend to the religious needs of the faithful nor instruct
> students in the whole of religious doctrine. That faculty members are expected to
> serve as exemplars of practicing Christians does not serve to make the terms and
> conditions of their employment matters of church administration and thus purely
> of ecclesiastical concern. The employment relationship between Mississippi
> College and its faculty and staff is one intended by Congress to be regulated by
> Title VII."

**2.**     **<u>Plaintiff's claims based upon religious discrimination and retaliation for religious</u>**
       **<u>discrimination are not barred by the "ecclesiastical abstention" doctrine.</u>**

The "ecclesiastical abstention" doctrine also arises out of the provisions of the First

Amendment and Article 1, Section 8 of the Louisiana Constitution of 1974 prohibiting "the free

exercise" of religion.  As the Louisiana Supreme Court recognized in <u>LeBlanc v. Davis</u>, 432

So.2d 239, 241 (La. 1983), "Civil courts are prohibited from interfering in the ecclesiastical

---

[5] At his meeting with Dr. Brewer on May 20, 2015, Dr. Brewer categorically instructed
Dr. Aguillard that he could not be "President Emeritus," to "never, ever" contact one of his Vice
Presidents and not to contact any donors or potential donors.  Aguillard Aff., ¶18.

matter of a religious group, that is, in matters concerning religious discipline, faith, custom or law."  See also Fairfield Pentecostal Church v. Johnson, 170 So.3d 357 (La. App. 3rd Cir. 2015), and cases cited.  Similarly, as the Supreme Court found in Fluker Community Church v. Hitchen, 419 So.2d 445, 447 (La. 1982), the "refusal to adjudicate a dispute over property rights or **contractual obligations**, even when no interpretation or evaluation of ecclesiastical doctrine or practice is called for, but simply because the litigants are religious organizations, may deny a local church recourse to an impartial body to resolve a just claim."  (Emphasis added.)

Louisiana College is incorporated as a non-profit corporation under La. R.S. 12:201, et seq.[6]  As such, Louisiana College is expressly granted the power and authority to enter into contracts.  See La. R.S. 12:207(6) which provides that:

> "(6) To make contracts, to incur liabilities, to borrow money, to issue notes, bonds and other obligations, and to secure any of its obligations by hypothecation of any kind of property; ..."

As the Supreme Court of Kansas concluded in Kant, *supra*,

> "... Simply put, the ecclesiastical abstention doctrine does not work to deny jurisdiction in the circumstances presented. In Kirby, we held, "when the case merely involves a church, or even a minister, but does not require the interpretation of actual church doctrine, courts need not invoke the ecclesiastical abstention doctrine."29 Indeed, if "neutral principles of law" or "objective, well-established concepts   familiar to lawyers and judges" may be applied, the case—on its face—presents no constitutional infirmity.30 Of course, neutral principles of law can be applied to the breach of contract claim presented in the instant case; but, more importantly, Kant's claim involves no consideration of or entanglement in church doctrine. We reiterate that the intent of ecclesiastical abstention is not to render "civil and property rights   unenforceable in the civil court simply because the parties involved might be the church and members, officers, or the ministry of the church."

---

[6] Although Louisiana College is a "non-profit" corporation, it is not a **religious** corporation.  See Brewer Aff., Ex. A4.

So here.  Contrary to the implication of Louisiana College, there is *no* issue with respect to religious doctrine or principles to be decided in this case.  Dr. Aguillard himself firmly believes and is committed to the religious principles set forth in the Baptist Message 2000 as adopted by Louisiana College.  See Aguillard Aff., ¶11.  Louisiana College's Student Handbook (2015/2016 expressly provides in this connection that (*id*. at p. 78):

> "3.Harassment.
> "Verbal, written, or physical *abuse*, annoying communications or threats directed toward any student, *faculty*, staff, or guest of the College *is prohibited*. Examples include, but are not limited to: defamatory remarks (whether written, spoken, or published in any form), intimidation, stalking, humiliation, prank calls, inappropriate computer use, or *abuse because* of one's race, color, religion, sex, disability, age, national or ethnic origin. ..."(Emphasis added.)

See Aguillard Aff., 12, Exhibit D.

The harassment of Dr. Aguillard (and the consequent continuation of a hostile work environment) reached its zenith on September 28, 2015, when he was confronted by one Don B. Connor, who purported to be a law-enforcement officer hired by Dr. Brewer to investigate Dr. Aguillard.  Aguillard Aff., ¶28.  Dr. Aguillard called Dr. Brewer, who indeed confirmed that he [Dr. Brewer] had hired Mr. Connor, that Mr. Connor represented him and spoke for him [Dr. Brewer].  Mr. Connor told Dr. Aguillard that this was a "Catholic thing" and that he [Dr. Aguillard] must "resign immediately" or be fired and that Dr. Aguillard and his family would be "ruined."  Mr. Connor forcibly took possession of Dr. Aguillard's computer.

As a result of that traumatic occurrence, Dr. Aguillard spent weeks in a hospital recovering from the assault by Mr. Connor authorized by Dr. Brewer.[7]  That was followed by Dr.

_____

[7] The facts strongly suggest that Dr. Aguillard could easily amend his Complaint to state a cause of action for the intentional infliction of emotional distress.  See Quinlan v. Sugar-Gold, 219 So.3d 1173 (La. App. 2nd Cir. 2017), and cases cited.

Aguillard being locked out of his office without any prior notice and the resulting seizure of his

personal property.  Aguillard Aff., ¶36.  As the Court can readily see, the adjudication of these

claims by Dr. Aguillard rests upon neutral principles of law.  They do not involve any religious

doctrine or issues.  The "ecclesiastic abstention" doctrine is simply not applicable.

It is clear from a casual review of Plaintiff's complaint that Plaintiff has asserted multiple

causes of action against Louisiana College for "retaliation," including Plaintiff's assistance to Dr.

Carolyn D. Spears.  The "anti-retaliation" of Title VII provides that:

> "It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for employment, for an
> employment agency, or joint labor-management committee controlling
> apprenticeship or other training or retraining, including on-the-job training
> programs, to discriminate against any individual, or for a labor organization to
> discriminate against any member thereof or applicant for membership, because he
> has opposed any practice made an unlawful employment practice by this
> subchapter, or because he has made a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or hearing under this subchapter."

As the Court found in Finn v. Kent Security Services, Inc., 961 F.Supp.2d 1293 (S.D. Fla):

> "To establish a prima facie case of retaliation under Titel VII, a plaintiff
> therefore must show that (1) she engaged in statutorily protected expression; (2)
> she suffered an adverse employment action; and (3) some causal relation exists
> between the two events *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266
> (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th
> Cir. 1998)).  Unlike under Title VII"s anti-discrimination provision, no
> component of the anti-retaliation provision requires that the emlpoyer have taken
> action against the employee because of that employee's race, color, religion, sex,
> or national origin but rather that the employer have taken action because the
> employee – regardless of race, color, religion, sex, or national origin – opposed
> discrimination of anyone – including herself or others or both – on the basis of
> that person or persons' race, color, religion, sex, or national original."

Dr. Aguillard could reasonably believe that the wrongful discriminatory employment actions

taken by Louisiana College against him were "retaliation" for his opposition to its discrimination

8

against him on the grounds of his religious beliefs.  There are genuine issues of material fact on

Plaintiff's retaliation claims that bar summary judgment.

**3.**     **There are genuine issues of material fact as to whether Louisiana College is a "religious"educational institution.**

Whether Louisiana College is a "religious" education institution is an intensely factual

issue that requires consideration of numerous factors.  As the Court of Appeals stated in E.E.O.C.

v. Kamehameha Schools/Bishop Estate, 990 F.2d 458, 460 (9th Cir. 1993):

> "The district court weighed the religious characteristics of the Schools
> against their secular characteristics and concluded the Schools were exempt under
> § 2000e-1 as religious educational institutions because the purpose and character
> of the Schools is primarily religious. 780 F. Supp. at 1324-26. In applying §
> 2000e-1 the district court adopted the approach approved by this court in
> Townley, 859 F.2d at 618, of weighing '[a]ll significant religious and secular
> characteristics . . . to determine whether the corporation's purpose and character
> are primarily religious.' We reaffirm that approach. We differ from the district
> court only in evaluating the facts of this case in light of Congress' intention as to
> the scope of the exemption for religious organizations.

> "We stated in Townley that § 2000e-1 does not exempt an institution that
> is "merely `affiliated' with a religious organization." Id. at 617. We also observed,
> "Congress's conception of the scope of [ § 2000e-1] was not a broad one. All
> assumed that only those institutions with extremely close ties to organized
> religion would be covered. Churches, and entities similar to churches, were the
> paradigm." Id. at 618. We then held that, in determining whether an institution
> falls within the limited exemption for religious institutions under § 2000e-1, "each
> case must turn on its own facts. All significant religious and secular
> characteristics must be weighed to determine whether the corporation's purpose
> and character are primarily religious. Only when this is the case will the
> corporation be able to avail itself of the exemption." 859 F.2d at 618. "Our inquiry
> here," we said, "is to determine whether the `general picture' of the institution is
> primarily religious or secular." Id. at 619 n. 14."

Louisiana College relies entirely upon the Affidavit of Dr. Richard B. Brewer, its

incumbent President, to establish its identity as a "religious" educational institution.[8]  However, a

certified copy of the "Restated Articles of Incorporation of Louisiana College" which became

effective January 1, 2009, is attached to Dr. Brewer's affidavit as Exhibit A4.  The Restated

Articles provide in Article 1 that:

> "The name of this corporation shall be and it shall be known as 'Louisiana College.'  It is and shall be an ***eleemosynary institution and nonprofit corporation*** which shall exist in perpetuity.  It shall have the powers to engage ***in any lawful activity for which corporations may be formed*** under Louisiana Revised Statutes 12:201, et seq." (Emphasis added.)

Paragraph 4.4 expressly recognizes its rights to hire "all professors or teachers, as well as to fix

their salaries" without any restriction.

There is nothing in the name "Louisiana College" or in its powers as "an eleemosynary

institution and nonprofit corporation" which suggests that it is a "religious" institution.

According to the Re-Stated Articles, "[t]he primary purpose of Louisiana College is to be a

community of learning and free inquiry, presenting a thorough and honest academic program

from a Christian perspective."  That does not show, however, that its purpose and character is

primarily religious.  See Kamehameha, *supra*.

Moreover, Dr. Brewer's affidavit does not discuss or even mention the fact that Louisiana

College receives both federal and state funding for various programs sponsored by it.  See

Aguillard Aff., ¶41.  The documents produced by Louisiana College include contracts between

Louisiana College and the Louisiana State Board of Regents that expressly provide, among other

---

[8] Louisiana College relies heavily upon Louisiana College v. Sebelius, 38 F.Supp.3d 766 (W.D. La. 2014), to support its position.  That case was an action under the Religious Freedom Restoration Act.  Louisiana College fails to point out that the Defendants in that the defendants in Sebelius appealed the district courts' decision to the Fifth Circuit, where the case was apparently settled and then dismissed.

things that "Contractor [Louisiana College] further agrees not to discriminate in its employment practices and will render services under this contract without regard to race, color, religion, sex, national origin, veteran status, political affiliation or disabilities ... ." See Pesnell Aff., ¶3. Nor does it mention the fact that Louisiana College holds itself out to its employees and prospective employees as an employer that does ***not*** discriminate on the grounds of religion. Aguillard Aff., ¶12.

At this point there is a genuine issue of material fact which precludes summary judgment. The discovery that has been done to date has not been satisfactory. See Pesnell Aff., ¶2. Louisiana College has not been forthcoming. *Id.* This issue requires further ventilation. Consequently, summary judgment at this point would, in any event, be premature on this issue.

### CONCLUSION

For all of the foregoing reasons, Louisiana College's Motion for Partial Summary Judgment should be denied.

Respectfully submitted,

THE PESNELL LAW FIRM
(A Professional Law Corporation)

*s/Billy R. Pesnell*
By: _____
Billy R. Pesnell
Louisiana State Bar Roll No. 10533
J. Whitney Pesnell
Louisiana State Bar Roll No. 15035
W. Alan Pesnell
Louisiana State Bar Roll No. 23249

H.C. Beck Building, Suite 1100
400 Travis Street (Zip: 71101)

11

Post Office Box 1794
Shreveport, Louisiana 71166-1794
Telephone: (318) 226-5577
Telecopy: (318) 226-5578

--      Attorneys for Plaintiff Joe W. Aguillard.


C E R T I F I C A T E


I HEREBY CERTIFY That on September 14, 2018, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System.  Notice of this filing will be sent to counsel

of record by operation of the Court's electronic filing system.

Shreveport, Louisiana, this 14th day of September, 2018.



*s/Billy R. Pesnell*

_____
                        Of Counsel