UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA

| | | |
|---|---|---|
| JOE W. AGUILLARD, | * | CIVIL ACTION NO. 1:17-CV-01671 |
| Plaintiff | * | |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| LOUISIANA COLLEGE, | * | |
| Defendant | * | MAGISTRATE JUDGE HORNSBY |

# AFFIDAVIT OF
# DR. JOE W. AGUILLARD

STATE OF LOUISIANA,

PARISH OF CADDO.

BE IT KNOWN That on this day, before me, the undersigned authority, a Notary Public duly qualified and acting as such within and for the above Parish, State aforesaid, personally came and appeared:

JOE W. AGUILLARD, husband of Judy Collins Aguillard, a resident of Rapides Parish, Louisiana, whose permanent mailing address is 107 Garnet Street, Alexandria, Louisiana 71360 (hereinafter referred to as "Appearer"),

who, after being duly sworn, declared and stated that:

**1.**    Appearer is the Plaintiff in the captioned action. Appearer was born July 29, 1956, and is thus sixty-two (62) years old. Appearer has personal knowledge of the facts hereinafter set forth in this affidavit.

**2.**    Appearer and his immediate family have been a part of Louisiana College for over eighty (80) years. Appearer graduated from Louisiana College in 1977. Appearer's mother,

father, wife and three (3) children and multiple aunts and uncles are all graduates of Louisiana College, beginning in 1935 through the present. Appearer's father, Harry Aguillard, graduated from Louisiana College in 1939 and later served as a professor at Louisiana College. He also served as a member of the Board of Trustees of Louisiana College and as a member of the Louisiana College Hall of Fame. Appearer was named "Teacher of the Year" by the Louisiana College student body in 2004. Appearer and his wife, Judy Collins Aguillard, are both 2006 Distinguished Alumni of Louisiana College.

**3.** Appearer was first employed by Louisiana College on August 1, 2000, as a professor and the Chair of the Division of Education and Appearer continued to serve on the faculty of Louisiana College until March 31, 2016, when he was terminated.

**4.** On January 17, 2005, the Board of Trustees elected Appearer as the eighth president of Louisiana College and Appearer became a member of and served on the Louisiana College Board of Trustees in January 2005 where he served through July 31, 2014. Appearer transitioned to "President Emeritus" of Louisiana College on or about April of 2014 when, as a result of poor health due in part to constant attacks from religious attackers known as "Calvinists," Plaintiff and the Board of Trustees of Louisiana College entered into a written employment agreement with Louisiana College effective April 15, 2014, pursuant to which Plaintiff became "President Emeritus" of Louisiana College and a fully tenured member of the Faculty at Louisiana College. A copy of Appearer's employment contract with Louisiana College is attached hereto as Exhibit "A."

**5.** Pursuant to his employment agreement with Louisiana College, Appearer was assigned to teach a course or courses in teacher education. Appearer has never taught any course in religion or which focused on religion at Louisiana College nor has he participated in or been

instructed to participate in, any religious function sponsored by Louisiana College. Appearer did attend religious functions which professors at Louisiana College were required to attend by the Faculty Guidelines.

**6.** Louisiana College represents to its potential and prospective professional employees that it does not discriminate on the basis of religion. It has employed and currently has on its teaching staff one or more teachers who are Methodist, Catholic, Pentecostal, Assembly of God and Presbyterian.

**7.** Louisiana College employed Dr. Richard B. Brewer as its President in March of 2015. Dr. Brewer began his employment as President of Louisiana College on April 7, 2015, and continues to serve in that capacity. Dr. Brewer is admittedly a "Calvinist" in his religious beliefs, although that was not known at the time he was elected President. Shortly after Dr. Brewer's employment as President of Louisiana College, a public press release known as "The Mars Hill Article" surfaced and began circulating reports that when Dr. Brewer interviewed for the position of president of Mars Hill, that he denied fidelity to the Baptist Faith and Message, would not sign it nor would he require the college faculty at Mars Hill to sign it [Exhibit "B": Mars Hill Article]. Appearer has never been a Calvinist.

**8.** On or about May 3, 2015, Appearer discovered a picture of Kyle Johnston openly working with "Voices of Louisiana" on stage with Dr. Paige Patterson. Kyle Johnston was a voice from Appearer's past. Johnston was a leader of the "Reformed Calvinist Movement" who organized and led a public protest against Appearer and members of the Board of Trustees on March 24, 2014, for opposing the "Reformed Calvinism Movement" at Louisiana College. Mr. Dwayne Rogers, Chief of Campus Police at Louisiana College, advised the Executive Committee of the Board of Trustees, that the Louisiana State Police had assigned and dispensed plain clothed

State Troopers to protect Appearer and prevent a breach of the peace. Mr. Rogers informed the Executive Committee on March 25, 2014, and again on April 14, 2014, that the "Calvinists" represented a serious threat to Appearer's life. As a result of the threat of physical violence presented by Kyle Johnston and the Calvinists, Appearer and Dr. Michael Shamblin decided to and did suspend Kyle Johnston from Louisiana College.

**9.** Appearer immediately reported on the night of May 3, 2015, his and his wife's fear for their physical safety from Kyle Johnston and the Calvinists to Dr. Michael Shamblin, Associate Vice-President of Louisiana College, Dr. Brandon Bannon, Dean of Students at Louisiana College, and Dr. Tommy French, Chairman of the Board of Trustees of Louisiana College. Appearer subsequently filed a written "whistleblower complaint" for a "workplace safety violation."

**11.** Upon employment as President of Louisiana College in January, 2005, Appearer signed The Baptist Faith and Message 2000 signifying his full allegiance to the Baptist creed and his enforcement of all faculty to sign contracts requiring support of the Baptist creed as required in the Bylaws of Louisiana College. Appearer became a special "target" for the Calvinists because of Appearer's activities and leadership at the instruction and direction of the Board of Trustees of Louisiana College as follows:

- Chaired the Committee and co-authored the current *Mission of Louisiana College* which specifically ties the Louisiana College religious theology of inerrancy to the Baptist Faith and Message 2000 with no alignment to the Reformed Calvinist Movement.
- Chaired the Committee and co-authored Louisiana College Christian Commitment Statement
- Chaired the Committee and co-authored Massive Revisions of the Entire Faculty Handbook
- Chaired the Committee and co-authored Dissolution of the Faculty Constitution as found in the Faculty Handbook
- Chaired the Committee and co-authored Created the Faculty Affairs Advisory

    Committee and revised and amended the Faculty Handbook, including tenets of the Faculty Affairs Advisory Committee under the authority granted by the Board of Trustees under the provision, "Changes to the Faculty Handbook may be authorized by vote of the Academic Council (see 1.2.13) or the Administrative Council (see 1.2.5). page 19 Faculty Handbook"

- Chaired the Committee and co-authored the Academic Freedom Policy
- Chaired the Committee and co-authored Restated Articles of Incorporation of Louisiana College
- Chaired the Committee and co-authored Revised Louisiana College Bylaws
- Originated the Faculty Contracts requiring affirmation of the Baptist Faith and Message 2000
- Originated the Faculty Contracts requiring affirmation of the Christian Commitment Statement

As a result of his participation in these actions, Appearer became a "lightening rod" for the Calvinists and the focal point of their attempts to bully, threaten and intimidate.

  **12.** Louisiana College does not discriminate on the basis of religion in hiring its professional staff as shown in its form "Application for Employment," a copy of which is attached as Exhibit "C." The 2015/2016 "Student Handbook" expressly prohibits "harassment" because of one's religion. See Exhibit "D" [Excerpt from Student Handbook].

  **13.** Appearer justifiably relied to his detriment upon the representation of Louisiana College that the Baptist Faith and Message 2000 constituted its core religious beliefs. Louisiana College failed and refused to protect Appearer in his religious beliefs, despite the fact that Appearer's religious beliefs were identical in all respects to those professed by Louisiana College but not followed by it.

  **14.** Appearer's employment by Louisiana College was ostensibly terminated by Louisiana College on the ground that his employment contract had no "term" and, therefore, Appearer was an "at will" employee, who could be terminated at any time for any reason. See Exhibit "E-1" and "E-2" attached.

  **15.** The reasons assigned by Dr. Brewer for terminating Appearer's employment are

pretextual.

**16.** Appearer's employment with Louisiana College was terminated by Dr. Brewer, in part, because of Appearer's opposition to Calvinism.

**17.** Appearer had an appointment with Dr. Brewer on May 6, 2015, to discuss Appearer's employment agreement with Dr. Brewer and Mrs. Ingrid Johnson, Louisiana College's attorney. Dr. Brewer canceled his appointment with Appearer and met instead with Ms. Johnson alone to discuss how to break Appearer's employment agreement specifically because of Appearer's "workplace violence" complaint and the re-employment of Calvinist Kyle Johnston [Exhibit F: email from Dr. Brewer cancelling appointment].

**18.** Appearer met with Dr. Brewer and Randall Hargis at Appearer's request on May 20, 2015, ostensibly to review Appearer's employment agreement. However, there was no discussion of Appearer's employment agreement. Rather, Dr. Brewer ridiculed, made fun of, belittled and reprimanded Appearer for having filed his "workplace violence" complaint reporting his fear of Kyle Johnston and the Calvinists and for his religious beliefs which were antithetical to Reformed Calvinism. Dr. Brewer ordered Appearer to "never communicate with one of my vice presidents ever again under any circumstances" and not to contact or approach any potential donors to Louisiana College. Dr. Brewer further instructed Appearer to "follow the College Chain of Command." [Exhibit "G": May 20 Transcript of Meeting]. As a result of Dr. Brewer's treatment, Appearer left his office crying and had a complete nervous breakdown.

**19.** While Appearer was acting as President of Louisiana College, the Board of Trustees provided Appearer personal protection against the attacks of the Calvinists. The attacks of the Calvinists upon Appearer while he was President of Louisiana College and the effects upon Appearer was the principal reason for Appearer stepping down as President of Louisiana College.

**20.**     Dr. Brewer subsequently characterized Appearer's "workplace violence" complaint at a hearing before the Faculty Advisory Committee on February 23, 2016, as "silly" and as having caused an "unnecessary disruption" of Dr. Bannon's "having ice cream with his boys" and "causing unnecessary trouble" for Dr. Brewer, "who was having dinner with his wife."

**21.**     Following the May 20, 2015 meeting, Appearer was isolated from all of the activities and duties associated with his status as a tenured full professor.  He was not allowed to serve on a single College Committee, not allowed to walk in a single College-wide event with regalia, not allowed to participate in any other customary functions enjoyed by other professors.  Appearer was assigned to teach a course load in excess of his contractually agreed limits.  Appearer was the only employee of Louisiana College who did not receive an end of year Christmas bonus in December, 2015.  Appearer was embarrassed and humiliated by his isolation.

**22.**     On or about April 22, 2015, Dr. Cheryl D. Clark openly attacked Dr. Carolyn D. Spears at a meeting of the Academic Council of Louisiana College, calling the courses taught by Dr. Spears a "joke."  As a result of the fear, humiliation and emotional distress caused by Dr. Clark's public and professional attack, Dr. Spears consulted Appearer, among other professional colleagues, to assist her in filing a grievance or "whistleblower complaint and an EEOC complaint.  Appearer agreed to and did assist Dr. Spears in doing so.

**23.**     Appearer filed a "Charge of Discrimination" with the EEOC and the Louisiana Commission on Human Rights on or about April 1, 2016, alleging that Louisiana College had discriminated against him because of his "disability, religion, Southern Baptist, and in retaliation for opposing illegal practices in violation of the American With Disabilities Act, as amended, and Title VII of the Civil Rights Act of 1984." This included, but is not limited to, the cyber-bullying, threats on his life.   The defamation suit was filed in retaliation and as a response to the

complaints filed by Appearer with the SACSCOC based, in part, upon discrimination against Appearer by Louisiana College for Appearer's religious beliefs.

24. In its response dated April 29, 2016, to Appearer's EEOC charges in the captioned action, Louisiana College advised the EEOC that:

> "Without being requested by the LC Board or President to do so and without notifying either the Board or President of his actions (as required by his *Employment Agreement*), **Dr. Aguillard assisted another LC professor, Carolyn Spears, in preparing a grievance against LC.** See Exhibit 2 (Hearing Transcript p. 57-59 and Hearing Exhibit LC-7B). Dr. Aguillard did not report his actions or the underlying issues with Ms. Spears up the chain of command as required by the Handbook." (Emphasis added.)

25. Contrary to the suggestion of Louisiana College, Appearer was *not* required by the terms of his Employment Agreement to either notify the President or the Board of Trustees or to have their consent in order to assist Dr. Spears with her complaint. As the Employment Agreement makes clear, Appearer was not only "President Emeritus" of Louisiana College but he was also a fully tenured professor at Louisiana College. As a fully tenured professor, Appearer had the right to assist Dr. Spears in drafting her "whistleblower complaint" and her EEOC complaint, without the consent or request of Louisiana College.

26. At a Faculty meeting on August 17, 2015, Appearer received a professionally prepared "Student Recruitment" brochure featuring none other than Kyle Johnston, the "Calvinist" leader. Exhibit "H": Student Recruitment Brochure. The brochure was posted all over the campus.

27. On September 28, 2015, Appearer received a telephone call from one Don B. Connor, whom Appearer had never met before, who advised Appearer that he (Connor) had been retained by Dr. Brewer to investigate Appearer. Appearer called Dr. Brewer to discuss the matter and Dr. Brewer did indeed confirm the fact that he had retained Mr. Connor and that Appearer

"must do what [Connor] says, he speaks for me. I have the unanimous approval of the board to do this."

**28.** Appearer and Rev. Jerry Dark, Jr., met with Mr. Connor at Appearer's office in the Lyn Alumni House. At the meeting, Mr. Connor told Appearer that he was a law enforcement officer and that he had "forty one years in law enforcement," and "I'm Catholic. This is a Catholic thing!" and "I believe God forgave me. Not because I just asked him to, but because I did everything as a human possible to fix my wrongs." Mr. Connor told Appearer that he must resign or be fired or that he and his family would be ruined.

**29.** Following the meeting, Mr. Connor followed Appearer to Appearer's vehicle and forcibly took possession of Appearer's two (2) computers from Appearer. Pursuant to Dr. Brewer's instructions, Mr. Connor subsequently engaged Teknarus Technology located in Baton Rouge, Louisiana, to "hack" into the confidential information electronically stored on Appearer's computers. As a result of this "hacking" into Appearer's computers, Dr. Brewer discovered drafts of Dr. Spears' "whistleblower" complaint which cited multiple SACSCOC violations and a draft of her EEOC complaint. These draft complaints were used by Louisiana College and Dr. Brewer to retaliate against Appearer and Dr. Spears for asserting their rights and used as a reason to terminate Appearer, in part, because of his religious beliefs and in retaliation for Appearer's complaints of "workplace violence" from the Calvinists.

**30.** As a result of the trauma inflicted upon Appearer by the assault and confrontations with Mr. Connor, Appearer was admitted to the River Oaks Trauma Hospital in New Orleans, Louisiana, for treatment for approximately three (3) weeks.

**31.** On or about December 3, 2015, Appearer received a phone call from Dr. Camacia Smith-Ross, Dean of Education, in which Dr. Smith-Ross informed Appearer that she had been

called into a meeting with Dr. Brewer and Dr. Clark at which meeting she was asked about Appearer's medical condition and work habits. Dr. Smith-Ross told Appearer that Dr. Brewer and Dr. Clark tried to coerce her into stating that Appearer's work performance was unsatisfactory because of Appearer's poor health so that Appearer could be dismissed on that ground. Dr. Smith-Ross refused to participate in this scheme. Dr. Smith-Ross advised Appearer that Dr. Brewer informed her that he had multiple people stalking and following Appearer and reporting to Dr. Brewer with respect to Appearer's activities. Exhibit "I": Affidavit under oath of Dr. Smith Ross.

**32.** Without any prior notice as required by the Faculty Handbook, by letter dated January 22, 2016, Dr. Cheryl D. Clark advised Appearer that Louisiana College considered Dr. Aguillard's employment to be "at will" and that Louisiana College "was entitled to dismiss [him] at any time and for any reason and was not obligated to show cause" for his dismissal.

**33.** By email dated January 29, 2016, Dr. Brewer notified Appearer that he (Brewer) was placing Appearer on "administrative leave" and that he was relieving Appearer of all of his duties and responsibilities as "President Emeritus" and that he (Brewer) would re-assign all of Appearer's classes.

**34.** On February 9, 2016, Appearer filed a Whistleblower Complaint to Chairman of the Board, Dr. Randy Harper, reporting instances of "workplace violence," along with other SACSCOC, Department of Labor and EEOC violations.

**35.** On February 17, 2016, at 8:52 a.m., Appearer received an email from Chairman Harper which was a written guarantee of "no retaliation" against Appearer from Louisiana College. Exhibit "J": email.

**36.** On February 17, 2016, Appearer went to his office in the Lyn Alumni House and,

upon arrival, found a locksmith changing his office door locks and the door locks to the Lyn Alumni House. Appearer had no prior notice that the locks were to be changed nor was he given any keys to the building or his office. As a result, Appearer was denied access to his office and his personal belongings. Appearer reported the incident to his supervisor, Dr. Carolyn D. Spears, who advised Appearer that no one had discussed the matter with her and she had no knowledge of the incident.

**37.** Appearer immediately called Chairman Harper who had that morning guaranteed that this would never happen. Chairman Harper replied in text that he could no longer discuss anything with Appearer. Exhibit "K": text message.

**38.** Appearer filed a second Whistleblower Complaint with SACSCOC according to their policy delineating the Core Requirement and Comprehensive Standards violated by Dr. Brewer, et. al., including but not limited to, the failure to protect Appearer as required for his fear of multiple workplace violence complaints which is a SACSCOC Comprehensive Standard required for Louisiana College's accreditation in order to maintain eligibility to receive Federal Title IV Funding.

**39.** After Appearer reported and documented multiple violations of SACSCOC Federally Required Standards to SACSCOC, on or about May 25, 2017, Louisiana College, Dr. Richard B. Brewer and Dr. Cheryl D. Clark filed a defamation suit against Appearer in the Nineth Judicial District Court in and for Rapides Parish, Louisiana, which specifically cites Appearer's Whistleblower Complaint to SACSCOC as reason for the suit and is pending under Docket No. 259,010F. As will more fully appear from the allegations in their petition, that suit was and is in retaliation of actions taken by Appearer.

**40.** All of the adverse employment decisions made by Louisiana College with respect

to Appearer as set forth hereinabove discriminated against Appearer, in part, because of his religious beliefs and were in retaliation for acts taken by him in pursuit of his religious beliefs.

**41.** Louisiana College receives only about ten percent (10%) of its annual budget from the Louisiana Baptist Convention through contributions from its cooperating churches. Over eighty percent (80%) of Louisiana College's annual budget comes from student's tuition, room, board and fees of which are primarily subsidized through Title IV federal funds and State of Louisiana funds which are principally granted and managed through the Louisiana State Board of Regents.

**42.** The Louisiana College Central Curriculum consists of fifty-six (56) liberal arts courses of which only three (3) are required Christian/Biblically-based courses. None of the fifty-six (56) hours of course work are designed toward propagation of the Baptist faith.

IN WITNESS WHEREOF, Appearer Joe W. Aguillard has executed this Affidavit on this 14th day of September, 2018.

                                                  */s/Joe W. Aguillard*
                                                      Joe W. Aguillard

    */s/Debra N. Ervin*
    Debra N. Ervin, #33198
    NOTARY PUBLIC in and for
    Caddo Parish, Louisiana.

    My Commission Is For Life.