UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JOE W. AGUILLARD | CIVIL ACTION NO. 17-cv-1671 |
| VERSUS | JUDGE DOUGHTY |
| LOUISIANA COLLEGE | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Joe W. Aguillard ("Plaintiff") filed this civil action against Louisiana College ("LC"), his former employer. LC is a private college associated with the Baptist faith. Plaintiff's original complaint invoked federal laws that prohibit discrimination on the grounds of religion, age, and disability. Plaintiff also alleged that LC retaliated against him for complaining about and opposing unlawful discrimination. Judge Doughty granted partial summary judgment for LC and dismissed Plaintiff's Title VII religious discrimination and retaliation claims on the grounds the college falls within a religious organization exemption. Doc. 30.

Plaintiff then filed the Motion for Leave to File First Amended Complaint (Doc. 32) that is now before the court. Plaintiff's motion states that he seeks to add three additional paragraphs to the complaint and assert a tort claim for intentional infliction of emotional distress. The proposed pleading and related briefing reveal that Plaintiff also seeks to add federal retaliation claims. LC opposes the proposed amended complaint on a variety of

grounds. For the reasons that follow, it is recommended that the motion for leave to amend be granted.

**Summary of the Allegations**

Plaintiff became the president of LC in 2005. He suffered a major heart attack in 2011 and underwent quadruple bypass surgery. In January of 2014, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"). As an accommodation to Plaintiff's disabilities, LC entered into a written employment agreement with him. Plaintiff became "President Emeritus" of LC and a fully tenured member of the faculty. Complaint, ¶¶ 1-5.

LC employed an acting president to follow Plaintiff, and Plaintiff performed his duties successfully during the one year of that administration. LC then hired Dr. Richard Brewer as president, and Brewer has held the job since April 2015. About a month after Brewer took office, Plaintiff filed a "fear of workplace violence complaint" with school officials to protest Dr. Brewer employing Kyle Johnson. Plaintiff asserted that Johnson was one of the leaders of a group that promoted the "Calvinist" religious belief at LC and had previously threatened Plaintiff's life. Plaintiff alleges that Brewer is also a Calvinist, and Plaintiff is not. Brewer knew at the time he hired Johnson that the Calvinists "didn't just want Dr. Aguillard gone, they wanted him dead." Complaint, ¶¶ 6-8.

Plaintiff met with Brewer in May 2015. Brewer told Plaintiff that he could not be president emeritus. Referring to Plaintiff's complaint about Johnson's employment, Brewer told Plaintiff to never contact any of his vice presidents again and to stop speaking to LC donors. ¶ 9.

Plaintiff alleges that Brewer decided, after Plaintiff filed his workplace violence complaint, to attempt to force Plaintiff to resign his employment. Brewer isolated Plaintiff and did not allow him to participate in the usual and customary faculty functions. He refused to communicate with Plaintiff with respect to Plaintiff's work duties. ¶¶ 10-11.

Brewer and other LC officials became aware in summer 2015 of the circulation of documents, including a newspaper article, which Plaintiff describes as relating to "a press conference at which Dr. Brewer had denied the veracity of the Baptist Faith and Message 2000 along with other Baptist doctrinal statements." Brewer believed that the circulation of the package could be attributed to Plaintiff. ¶ 12. Brewer soon circulated a recruitment flier that featured a picture of "Kyle Johnson along with other pictures of Calvinists who had bullied and harassed Plaintiff while he was serving as President of Louisiana College." ¶ 13.

Plaintiff received a phone call from Don Benton Connor in September 2015. Mr. Connor represented that he was "in law enforcement" and that he had been hired by Dr. Brewer to investigate Plaintiff. Plaintiff agreed to meet Connor at his office in the alumni house. Plaintiff telephoned Brewer during the meeting, and Brewer confirmed that he had hired Connor to conduct an investigation, and Plaintiff should do whatever Connor said because, "He speaks for me." ¶ 14.

Connor, "who appeared to be armed with a handgun," stated that "this is a Catholic thing" and demanded that Plaintiff immediately resign his position at LC because of religious issues. Connor threatened to ruin Plaintiff's career, and he said that if Plaintiff

did not resign, "Your career will go down the toilet, and your family will remain exposed." ¶ 15.

Plaintiff had two computers in his truck, both password protected. One was his personal property, and the other was issued to him by LC. Plaintiff had personal and confidential information stored on both, including financial, legal, and medical records. Mr. Connor followed Plaintiff to his truck and physically took possession of the computers, over Plaintiff's objection, and slammed the top of one of them on Plaintiff's hand. Plaintiff alleges that LC "hacked" both computers and unlawfully obtained confidential information that he had stored on them. ¶¶ 15-17.

After the meeting with Mr. Connor, Plaintiff was admitted to the hospital for treatment and observation because of acute PTSD symptoms and the high risk of a second heart attack or stroke. He remained in the hospital for three weeks. After Plaintiff was released, Dr. Brewer continued to have Plaintiff followed and his whereabouts reported to Brewer. ¶¶ 18-19.

Dr. Brewer met with Plaintiff's supervisor and attempted to obtain statements from her to the effect that Plaintiff was too ill to work, had not been teaching his classes appropriately, had not attended required meetings, and could not perform his job duties. The supervisor refused to make such statements. She was fired without explanation a few weeks later. ¶ 20.

LC notified Plaintiff in January 2016 that it considered his employment to be at will and proposed that he be dismissed. Dr. Brewer notified Plaintiff a week later that Plaintiff was being placed on administrative leave and relieved of his duties. ¶¶ 21-22. Plaintiff

requested a hearing before a faculty committee, and that committee recommended that he be dismissed. Dr. Brewer notified him of his termination effective March 31, 2016.

Plaintiff filed a charge of discrimination with the EEOC and Louisiana Commission on Human Rights, alleging that LC discriminated against him because of his disability, his religion, and in retaliation for opposing illegal practices in violation of the Americans with Disabilities Act and Title VII. He filed a second charge of retaliation/discrimination with the EEOC and set forth more fully his religious beliefs conflict with Dr. Brewer. The EEOC issued a "right to sue" letter on both charges. ¶¶ 31-33.

The allegations summarized to this point are all found in the original complaint. Plaintiff also alleged in his original complaint that he was given keys to his office and the alumni house in which it was located. LC changed the locks on those doors in February 2016, thus denying Plaintiff access to his office and property stored in it. ¶¶ 26-27. Plaintiff proposes to add ¶ 27A to allege that LC seized movable property in his office, including personal belongings and confidential communications. LC returned portions of that property on three occasions in the months that followed. On the occasion of one return, Plaintiff "suffered a major PTSD event and his blood pressure reached over 200 as the result of the presence of a man illegally armed with a pistol during the time Plaintiff was inventorying and cataloging his property." Plaintiff hired a bodyguard, and he chose to send a personal representative to campus the next time property was returned. LC has not retuned all of the property that it seized.

Plaintiff also proposes to add Paragraph 33A, which would follow all other factual allegations, and allege that LC's conduct was extreme and outrageous, and the emotional

Page **5** of **14**

distress suffered by Plaintiff as a result was severe.  Plaintiff proposes to allege that LC knew and intended that its conduct would cause Plaintiff to sustain severe emotional distress, and he seeks recovery of damages for the tort of intentional infliction of emotional distress.

The other proposed amendments relate to retaliation claims.  Proposed ¶ 31A would allege that, in retaliation against Plaintiff for filing a charge of discrimination and a whistleblower complaint, Dr. Brewer and another LC official filed a defamation suit against Plaintiff in Rapides Parish state court.  Proposed ¶ 31B would allege that LC failed to report matters that were required to have been reported under the Clery Act, and the school then retaliated against Plaintiff for filing whistleblower complaints with respect thereto.  Plaintiff alleges that this violates a federal regulation.

**Rule 15 and Leave to Amend**

The court "should freely give leave [to amend a complaint] when justice so requires." F.R.C.P. 15(a)(2).  Rule 15 has a heavy bias in favor of granting leave. "[U]nless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." Martin's Herend Imports v. Diamond & Gem Trading, 195 F.3d 765 (5th Cir. 1999).  Refusal to grant leave to amend "without any justifying reasons is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 83 S.Ct. 227, 230 (1962).

**Intentional Infliction of Emotional Distress**

Plaintiff seeks to add a Louisiana-law tort claim for intentional infliction of severe emotional distress. LC's first objection is that the amendment would be futile because the proposed amendment is not adequate to state a claim under state law. Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile. Briggs v. Miss., 331 F.3d 499, 508 (5th Cir. 2003). An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. Id. Therefore, the court reviews the proposed amended complaint under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014), quoting Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000).

In assessing a motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Those facts must state a claim that rises above the speculative level and is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007); Amacker v. Renaissance Asset Mgmt., LLC, 657 F.3d 252, 254 (5th Cir. 2011). A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 127 S.Ct. at 1965).

To recover under Louisiana law for intentional infliction of emotional distress, a plaintiff must prove (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant

desired to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. Ordinary employment disputes, even those involving discrimination and sexual harassment, will rise to this level only in the most unusual of cases. Nicholas v. Allstate Ins. Co., 765 So.2d 1017, 1027 (La. 2000).

LC attacks each of the proposed new paragraphs and argues that none of them contain sufficient allegations to state an actionable claim. But the entire complaint, as amended, must be reviewed to make that assessment. Plaintiff alleged that he is an older person, born in 1956, with a known heart condition and diagnosis of PTSD. His employer hired another person who Plaintiff contends has previously threatened his life, and the employer has promoted its association with that new employee. Plaintiff alleges that his complaints about fear of workplace violence led to demands that he resign his position, strongarm tactics by an investigator who was possibly armed and employed some degree of physical force against Plaintiff, and threats that Plaintiff's career and family would be harmed if he did not resign. Plaintiff alleges that this, together with other activities such as hacking into his personal computer and obtaining confidential information, landed him in the hospital for three weeks.

The undersigned finds that these allegations are sufficient to justify the court in exercising its discretion to allow amendment of the complaint in this regard. "A claim has

facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245 (5th Cir. 2010). The requirements of the state-law claim are demanding, but Plaintiff has alleged sufficient facts to allow such an inferences. He should be allowed to plead his claim, after which LC may test it by more substantive means. See Precht v. Global Tower LLC, 2016 WL 8710024, at *2 (W.D. La. 2016)(Kay, M.J.)(Questions of futility are also resolved in the light most favorable to the plaintiff and with every doubt resolved in his behalf.); Rooney v. EZCORP, 2018 WL 3596054 (W.D. Tex. 2018)(A court may deny a motion for leave to amend on the basis of futility only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

    LC also argues that leave should be denied because it would be prejudiced by the amendment. The argument is that the court previously dismissed allegations regarding Calvinist-related Title VII harassment and discrimination, and allowing the assertion of this tort claim would force LC to address those same allegations. The court previously dismissed legal claims. It did not preclude any other claims from being based on the same allegations or assertions of fact. Leave to amend is ordinarily appropriate where the challenged conduct is essentially the same as that challenged in the initial pleading but the plaintiff merely asserts a new legal theory. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 599 (5th Cir. 1981).

    LC next argues that the amendment reflects bad faith. Its argument is that Plaintiff was aware of the facts underlying this claim when he filed his original complaint and could

have included the claim in that original pleading. But Plaintiff sought leave to amend within the deadline set in the court's scheduling order. That deadline ordinarily comes early in the case, and requests to amend filed before the deadline are rarely denied based on timeliness concerns. And mere delay alone is not sufficient grounds to deny leave to amend. "The delay must be *undue*, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co., 898 F.3d 461, 478 (5th Cir. 2018), quoting Mayeaux v. La. Health Serv. & Indem. Co., 376 F.3d 420, 426 (5th Cir. 2004). There is no such prejudice apparent in this case, in which the scheduling order was recently vacated. LC will have ample opportunity to test the new claim.

  LC's second bad faith argument is that Petitioner is improperly attempting to relitigate mental distress claims that were previously dismissed in a related state court suit that Plaintiff filed. LC mentions defenses of *res judicata* and *lis pendens* and threatens to seek attorney's fees for prosecution of a frivolous claim. Those are defenses that LC will have to plead and prevail upon. A plaintiff is not obligated to plead facts to overcome anticipated defenses in order to survive Rule 12(b)(6) review. The burden of establishing a defense is usually on the defendant, so "defenses are generally not the proper subject of Rule 12(b)(6) motions" and may be successful only if the grounds for the defense "clearly appear on the face of the plaintiff's complaint." Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 (5th Cir. 1997); see also Alexander v. Verizon Wireless Servs, LLC, 875 F.3d 243, 249 (5th Cir. 2017). The defenses mentioned by LC are not evident from

the face of the complaint, so they do not warrant denying leave to add the intentional infliction claim.

**EEOC Retaliation Claim**

Plaintiff's proposed Paragraph 31A would allege that Dr. Brewer and another LC official filed a defamation suit against Plaintiff in state court in May 2017 in retaliation for Plaintiff filing of an EEOC charge of discrimination and a whistleblower complaint. LC objects that this retaliation claim was not included in an EEOC charge of discrimination and properly exhausted. Plaintiff responds by citing a letter he wrote the EEOC that did ask it to make the state court petition a part of his earlier report and accept it as evidence of continued retaliation against him.

The Fifth Circuit recently held that a failure to exhaust administrative remedies under Title VII is not jurisdictional. "Failure to exhaust is an affirmative defense that should be pleaded." Davis v. Ft. Bend County, 893 F.3d 300, 307 (5th Cir. 2018), cert. granted, 2019 WL 166880 (1/11/2019).[1] "Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." Alexander, 875 F.3d at 249. Thus, a defendant is not entitled to a Rule 12(b)(6) dismissal of Title VII claims for failure to exhaust unless it appears from the face

---

[1] This is consistent with the Supreme Court's holding that failure of prisoners to exhaust their administrative remedies under the PLRA is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. Jones v. Bock, 127 S.Ct. 910, 921 (2007). The defendant "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010).

of the complaint that the plaintiff has not exhausted. Taylor v. Lear Corp., 2017 WL 6209031, *3 (N.D. Tex. 2017).

LC's asserted lack of exhaustion regarding this claim, along with any other affirmative defenses, will have to be established through a motion for summary judgment or at trial. Plaintiff was not obligated to anticipate all possible defenses and plead facts to overcome them. Thus, the potential defenses do not warrant denying leave to amend.

LC also argues that the EEOC retaliation claim is futile because there is not a sufficient temporal proximity between Plaintiff's filing of two EEOC charges and the defamation suit that was filed about a year later. One element of a retaliation claim is a showing that there was a causal connection between the protected activity and an adverse employment action. In the Fifth Circuit, "temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." Porter v. Houma Terrebone Housing Authority, 810 F.3d 940, 948 (5th Cir. 2015). Two months or so may be adequate, but longer periods may not. Id., at 948-49. But temporal proximity or suspicious timing is not a necessary element of a retaliation claim. It is merely one way of proving causation. A plaintiff may use direct or other circumstantial evidence to meet that burden. The mere absence of temporal proximity does not render this retaliation claim futile.

**Clery Act Retaliation**

Plaintiff's proposed ¶ 31B alleges that LC failed to report numerous events that were required to have been reported pursuant to the Clery Act, which is a federal statute that requires colleges participating in federal financial aid to maintain and disclose campus

crime statistics and security information. Plaintiff alleges that LC retaliated against him for filing "whistleblower complaints" about these matters, in violation of 79 F.R. 62783(m). Cited in that document, though not in the amended complaint, is 34 C.F.R. Section 668.46(m), which provides that an institution or its agent may not retaliate or discriminate against any individual for exercising their rights or responsibilities under other provisions of the regulation.

LC objects that it is unsure what cause of action is supposedly asserted by this new allegation. The undersigned finds that it is, within the context of the rest of the complaint, adequate to warrant granting leave to amend. LC may use discovery to explore the grounds for the claim.

**Conclusion**

Leave to amend is ordinarily freely granted. Plaintiff has moved for leave within the time permitted in the scheduling order. He was not obligated to out-plead every potential defense LC might raise or allege all facts that he might offer in evidence to prove a claim. The claims he asserts are, accepting his facts as true, not necessarily futile under applicable law.

Accordingly,

It is recommended that Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 32) be granted.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of February, 2019.

_____
Mark L. Hornsby
U.S. Magistrate Judge