# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

JOE W. AGUILLARD          CIVIL ACTION NO. 1:17-CV-01671

VERSUS          JUDGE TERRY A. DOUGHTY

LOUISIANA COLLEGE          MAG. JUDGE MARK L. HORNSBY

## RULING

Plaintiff Joe W. Aguillard ("Aguillard") sued his former employer, Louisiana College ("LC"), alleging, in part, that LC filed a defamation suit against him in the Ninth Judicial District Court in and for Rapides Parish, Louisiana, in retaliation for his filing a charge of discrimination and a whistleblower complaint against LC. The defamation suit remains pending in state court.

Pending here is LC's Motion for Partial Summary Judgment [Doc. No. 84] seeking dismissal of Aguillard's retaliation claim. Aguillard has filed an opposition [Doc. No. 91]. LC has filed a reply [Doc. No. 92]. Aguillard has filed a supplemental memorandum in opposition and supplemental affidavits [Doc. Nos. 105, 113, 114]. LC has filed a reply to Aguillard's supplemental memorandum [Doc. No. 109].

For the following reasons, the Motion for Partial Summary Judgment is GRANTED.

## I. FACTS

Aguillard served as President of LC from January of 2005 to July of 2014. Thereafter he served as "President Emeritus" of LC and as a fully tenured member of the faculty. [Doc. No. 1, ¶¶ 1-5]. LC employed an acting president to follow Aguillard for one year, and LC then hired Dr. Richard Brewer ("Brewer") as president. Brewer has held the job since April 2015.

LC terminated Aguillard's employment effective March 31, 2016. Following his termination, Aguillard filed a charge of discrimination with the EEOC and the Louisiana Commission on Human Rights, alleging that LC had discriminated against him because of disability, religion, and in retaliation for opposing illegal practices in violation of the American With Disabilities Act, as amended, 42 U.S.C. §§ 12101-12213 ("ADA"), and Title VII. He filed a second charge of retaliation/discrimination with the EEOC and set forth more fully his religious beliefs conflict with Brewer.[1]  The EEOC issued a "Right to Sue" letter on both charges.  [Id. at¶¶ 31-33].

Aguillard's original Complaint invoked federal laws that prohibit discrimination on the grounds of religion, age, and disability. Aguillard also alleged that LC retaliated against him for complaining about and opposing unlawful discrimination.[2]

On May 25, 2017, LC, Brewer and Dr. Cheryl Clark ("Clark") jointly filed a defamation action against Aguillard in the Ninth Judicial District Court in and for Rapides Parish, Louisiana. The lawsuit alleges that Aguillard made defamatory statements against the plaintiffs in complaints to the Southern Association of Colleges and Schools ("SACSCOC").

On November 13, 2018, Aguillard filed a motion for leave to file his First Amended Complaint [Doc. No. 32]. LC opposed the motion for leave [Doc. No. 34]. On February 14, 2019, Magistrate Judge Hornsby issued a Report and Recommendation which recommended that

---

1 Aguillard alleges that Brewer is a "Calvinist"; whereas, Aguillard is not.

2 On September 19, 2018, this Court granted partial summary judgment for LC and dismissed Aguillard's Title VII religious discrimination and retaliation claims on the grounds the college falls within a religious organization exemption. [Doc. No. 30]. On April 4, 2019, this Court further granted summary judgment for LC and dismissed Aguillard's claims of disability discrimination, disability-based retaliation, and disability-based hostile work environment. [Doc. No. 70]. On June 13, 2019, this Court granted summary judgment for LC and dismissed Aguillard's claims arising under the Clery Act, including his Clery Act retaliation claim. [Doc. No. 89].

Aguillard's motion for leave be granted [Doc. No. 54].  On March 1, 2019, this Court adopted the Report and Recommendation [Doc. No. 57], and the First Amended Complaint was filed [Doc. No. 58].

Pertinent here is Paragraph 31A of the First Amended Complaint, which alleges:

"31A

On or about May 25, 2017, and in retaliation against Plaintiff for filing a "Charge of Discrimination" against Louisiana College and for filing a "Whistleblower" Complaint against Louisiana College, Louisiana College, Dr. Richard B. Brewer, and Dr. Cheryl Clark jointly filed a defamation suit against Plaintiff in the Nineth [sic] Judicial District Court in and for Rapides Parish, Louisiana, which remains pending.

(Doc. 58, ¶ 31A).

LC argues in its Motion for Partial Summary Judgment that Aguillard's retaliation claim, as set forth in Paragraph 31A, should be dismissed with prejudice.  The motion is fully briefed, and the Court is prepared to rule.

II.    **LAW AND ANALYSIS**

A.    **Standard of Review**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to

particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

> **B.    Analysis**

The defamation suit filed in state court by LC, Brewer, and Clark alleges four (4) causes of action against Aguillard in connection with complaints he made to SACSCOC:

> (1)  Aguillard made defamatory statements falsely accusing LC and Brewer of failing to follow LC's dismissal procedure for tenured faculty members when LC terminated Aguillard's employment;
>
> (2)  Aguillard made defamatory statements falsely accusing LC and Clark of illegal grade changing with regard to nursing students;
>
> (3)  Aguillard made defamatory statements falsely accusing LC, Brewer and Clark of not providing instruction to Aguillard's students in his ED 750 class after he was placed on administrative leave, and falsely accusing them of assigning the students arbitrary grades without adequate assessment and evaluation; and

> (4) Aguillard made defamatory statements falsely accusing LC of improper conduct with regard to an incident where a student accidentally shot another student. Aguillard stated to SACSCOC that "[L]egal procedures were not followed, the shooter was allowed to quietly drop out of school without any trace of the act, both students were instructed not to tell, so each told lies in order to be protected."

LC seeks summary judgment dismissing Aguillard's retaliation claim, asserting that the defamation action filed against Aguillard is a direct result of Aguillard's defamatory accusations to SACSCOC and is unrelated to Aguillard's ADA claims. LC further asserts that the defamation suit would have been filed regardless of Aguillard's EEOC charges of discrimination and "Whistleblower" complaint.

LC argues that Aguillard cannot show any causal connection between Aguillard's protected activity and the filing of LC's defamation action, that there is no temporal proximity between the protected activity and the alleged retaliation, and that Aguillard cannot show "but for" causation.

Aguillard opposes the motion on the grounds that the scope of the relief LC seeks is ambiguous and contradictory in that it is unclear whether LC is seeking summary judgment only on Aguillard's ADA retaliation claims or additionally on Title VII retaliation claims that Aguillard contends still remain. Aguillard further contends that the charges he filed with EEOC and SACSCOC are absolutely privileged as a matter of law, and, that no defamation action, however false or malicious the statements may be, can be maintained thereon. Finally, Aguillard argues that the "temporal proximity" concept is not applicable under the facts and circumstance of this case.

LC responds that this Court previously dismissed Aguillard's only Title VII claims, and therefore it need only seek dismissal of his remaining ADA retaliation claims in its motion for

summary judgment. LD further responds that its defamation action in state court is based on the charges Aguillard filed with the SACSCOC and not on the charges he filed with the EEOC.

### 1. ADA Retaliation Requirements

The elements of an ADA retaliation claim were stated in *Stringer v. North Bolivar Consolidated School District*, 727 Fed. App'x. 793 (5th Cir. 2018), as follows:

> A plaintiff can establish a prima facie case of retaliation under the ADA ... by showing that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.

at 804.

The third element, a causal connection, may be met by showing

> [c]lose timing between an employee's protected activity and an adverse action against him" *McCoy [v. City of Shreveport]*, 492 F.3d at 562 [5th Cir. 2007)]. Such temporal proximity must generally be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268,273-74 ... (2001). This Court has found, for example that "a time lapse of up to four months" may be sufficiently close ... while a five-month lapse is not close enough without other evidence of retaliation ... Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures. ...

*Feist v. Louisiana, Dep't.of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454-55 (5th Cir. 2013).

In relation to all elements of an ADA retaliation claim, the Fifth Circuit has noted:

> Retaliation claims asserted pursuant to the ADA also operate under the *McDonnell Douglas* framework. ... In retaliation claims, the plaintiff must ultimately show that the protected activity is the "but for" cause of the adverse employment action.

*Claiborne v. Recovery School District*, 690 Fed.App'x. 249, 259 (5th Cir. 2017).

### 2.     Title VII Retaliation Requirements

Title VII forbids an employer from retaliating against an employee who files a charge of discrimination or participates in an investigation of discrimination. *See Burlington N. & Santa Fe Rv. Co. v. White,* 548 U.S. 53, 59, (2006).

Title VII retaliation requires a plaintiff to establish that (1) he participated in protected activity under Title VII; (2) his employer took an adverse action; and (3) a causal connection exists between the protected activity and adverse employment action. See *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007).

"The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005).

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir. 1997). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Id.*

### 3.     Causal Connection

LC, in its motion for summary judgment, focuses on the third element of a *prima facie* retaliation claim under both the ADA and Title VII, which is the existence of a causal connection between the protected activity and the adverse employment action. LC argues that there is no causal connection here between Aguillard's charges of discrimination with the EEOC, and LC's filing of the defamation petition. LC asserts, rather, that the defamation petition arises in response

to the accusations made by Aguillard to the SACSCOC, the accrediting organization for the Southern states in which both public and private degree-granting institutions of higher education are members.

LC explains the importance of LC's accreditation. SACSCOC members must strictly adhere to rigorous standards in the delivery of higher education both to gain and thereafter maintain accreditation. [Doc. No. 84-4, p. 2]. Accreditation by SACSCOC is a public statement of an institution's continuing capacity to provide effective programs and services based on agreed-upon requirements; the U.S. Secretary of Education also recognizes accreditation by SACSCOC in establishing the eligibility of higher education institutions to participate in programs authorized under Title IV of the Higher Education Act and other federal programs. LC is accredited by SACSCOC to award associate, baccalaureate, and master's degrees. For LC, accreditation by SACSCOC signifies that: (1) LC's mission is appropriate to higher education; (2) LC's resources, programs and services are sufficient to accomplish and sustain that mission; and (3) LC maintains clearly specified educational objectives that are consistent with LC's mission and appropriate to the degrees it offers. [*Id*.]

In order to maintain its accreditation with SACSCOC, LC is expected to assure continued compliance with the standards set forth in SACSCOC'S Principles of Accreditation: Foundations of Quality Enhancement; a failure by LC to abide by these Standards could result in a loss of LC's SACSCOC accreditation. [*Id*.]

LC asserts that Aguillard's false accusations needlessly raised SACSCOC concerns regarding LC's accreditation and threatened that accreditation. LC further asserts that the need to address Aguillard's allegedly malicious, untrue SACSCOC assertions – through a judicial recognition of their complete falsehood – was the principal motivating factor for LC, Brewer, and

Clark's defamation action. [*Id*., p. 9]

In addition to its SACSCOC concerns, LC states that it brought the defamation action to protect its reputation and standing in the community; to protect its reputation and standing with students, prospective students, faculty members, prospective faculty members, donors and potential donors; and for the vindication of its own good name. [*Id*.] Aguillard's false and harmful accusations against LC - *not* complaints to the EEOC or alleged "whistleblower complaints" regarding Aguillard's ADA claims – resulted in the defamation Petition. [*Id*.]

LC's defamation petition alleges that, on or about June 7, 2016, Aguillard falsely complained to SACSCOC that LC and members of its administration had violated numerous SACSCOC policies, including, among other prohibited activities, "grade changing, implementation of unapproved employment policies and practices, retaliation for reporting fraud and perceived dishonest practices, violation of a safe and violence free workplace environment, misuse of approved college policies, Intellectual Property, Federal Financial Aid, and Integrity..." [Doc. No. 84-3, ¶ 19, quoting Original SACSCOC Complaint]. LC's petition further alleges:

> Aguillard's Original SACSCOC Complaint spans approximately 356 pages with attachments and accuses LC of multifarious incidences of wrongdoing and ill-practices. Some of Aguillard's statements are outright misrepresentations, and many more are self-serving distortions of the truth. Upon information and belief, Aguillard also forwarded a copy of his Original SACSCOC Complaint to other individuals, unaffiliated with SACSCOC.

[*Id*., ¶ 21]

According to LC, the four causes of action set forth in its defamation petition reflect no retaliation for Aguillard's filing of EEOC charges of discrimination or a whistleblower complaint of ADA discrimination. Rather, the redress of injury, and the protection of LC's reputation, are the concerns addressed therein.

LC acknowledges that its defamation petition does reference Aguillard's EEOC Complaints but contends that those references were made only as background information, and only in relation to Aguillard's flurry of charges against LC. LC argues that these EEOC references have nothing to do with Aguillard's ADA protected activities and do not reflect ADA "retaliation" through the defamation petition.

Additionally, LC argues that Aguillard can show no temporal proximity between the protected activity and the alleged retaliation. Aguillard alleges that LC's defamation petition was filed on or about May 25, 2017, while his first EEOC Complaint was filed April 1, 2016, and his second EEOC Complaint was filed July 8, 2016. Thus, there is a gap of 10.5 months between July 8, 2016, and May 25, 2017. Aguillard further alleges his whistleblower complaint was filed on February 9, 2016; therefore, there is a gap of 15.5 months between February 9, 2016, and May 25, 2017.

Finally, LC argues that, inasmuch as the causes of action asserted in its defamation petition address matters wholly unrelated to the ADA, Aguillard cannot show that, "but for" his filing of ADA charges of discrimination and alleged whistleblower complaint of ADA discrimination, LC would not have filed its defamation lawsuit.

Aguillard, on the other hand, argues that there is sufficient summary judgment evidence to establish a causal connection between his discrimination charges and his whistleblower complaint of ADA discrimination and LC's filing of the defamation suit. Aguillard points to Paragraph 18 of the defamation petition itself which refers to his first and second EEOC Charges of Discrimination. Aguillard additionally asserts that LC did not name Dr. Camacia Smith-Ross ("Smith-Ross") or Dr. Kimberly Sharp ("Sharp") as defendants in its defamation suit, despite the fact that they made the same contentions as Aguillard to SACSCOC.

Aguillard also contends that the charges he filed with SACSCOC are absolutely privileged as a matter of law and that no defamation action, however false or malicious the statements may be, can be maintained thereon.

Aguillard finally contends that the "temporal proximity" concept is not applicable in the facts and circumstances of this case because LC had a tactical reason to delay the filing of its defamatory action. Specifically, Aguillard suggests LC did not want to file an action for defamation against Dr. Aguillard before SACSCOC completed its review of the complaints made by Drs. Aguillard, Smith-Ross and Sharp and decided the issues, and, SACSCOC did not arrive at a decision on Dr. Aguillard's complaints until March 24, 2017.[3] LC then filed its defamation suit on May 24, 2017, less than two months later.

The Court finds that Aguillard has failed to establish a prima facie case of retaliation inasmuch as he fails to show a causal connection exists between the protected activity and the adverse action. The only link he points to is the defamation petition's references to his EEOC filings. However, when viewed in context, the references appear to be provided only as background or to show changes in Aguillard's earlier allegations to the SACSCOC. They do not support an inference of retaliatory intent.

As indicated above, the Fifth Circuit has said of temporal proximity, a time lapse of up to four months may be sufficiently close, while a five-month lapse is not close enough without other evidence of retaliation. *Feist,* 730 F.3d at 454. Aguillard argues that the "temporal proximity"

---

3 Aguillard attaches to his opposition the SACSCOC March 24, 2017 decision which concluded "…Commission staff determined that, whether or not you have a legitimate grievance against the institution, your documentation was insufficient to support claims of non-compliance with the SACSCOC accreditation standards you cited. Consequently, SASCOC has concluded its review of your complaint and will not accept any additional complaints or supplements from you referencing the issues in the initial complaint or in any of its supplements." [Doc. No. 91-14, p. 10].

concept is not applicable because LC allegedly delayed filing its defamation petition until the SACSCOC had ruled in order to obtain a tactical advantage, but he does not offer any evidence to support that supposition and does not explain what the tactical advantage would have been. Waiting until the SACSCOC had denied Aguillard's complaints may have made it more likely that LC will prevail in its defamation action. However, whether or not LC ultimately wins is irrelevant, as Aguillard contends that LC retaliated against him by simply filing the suit. Therefore, temporal proximity operates against Aguillard and in favor of summary judgment.

Even assuming arguendo that Aguillard has established a prima facie case, LC has provided proof of a legitimate, non-retaliatory reason that explains both the adverse action and the timing: that being the need to protect LC's SACSCOC accreditation and its reputation. In *Nall v. BNSF Railway Company*, 917 F.3d 335 (5th Cir. 2019), the Fifth Circuit, addressing an ADA retaliation claim, said in part:

> "... Once the plaintiff has established a *prima facie* case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. If such a reason is advanced, the plaintiff must adduce sufficient evidence to show that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred."

*Id*., at 349, quoting *Seaman v. CSPH, Inc*., 179 F.3d 297, 301 (5th Cir. 1999).

Aguillard has offered nothing from which the jury may infer that retaliation was the real motive, other than his own conclusory statements.

### 4.     Possible Title VII Retaliation Claim

Having reviewed Paragraph 31A of Aguillard's First Amended Complaint, it is questionable at best whether a Title VII retaliation claim was asserted. However, even if it were, the elements of both claims are the same, and, therefore, Aguillard has failed to establish the

existence of a genuine issue of material fact sufficient to defeat summary judgment on any title VII retaliation claim as well.

### 5. Absolute Privilege

Aguillard argues that the charges he filed with the SACSCOC are absolutely privileged as a matter of law and no defamation action, no matter how false or malicious the charges are, can be maintained thereon. However, the only legal authority he cites involves false and malicious EEOC charges and statutory language intended to protect an employee who utilizes the tools provided by Congress to protect his rights to file discrimination and retaliation charges with the EEOC. The rationale behind those cases seeking to protect employees who file charges with the EEOC would not seem equally applicable to those making false or malicious charges to a college accrediting agency. This argument would seem more relevant as a defense to the defamation action itself. It does not raise a genuine issue of material fact for trial as to whether Aguillard has met his burden of establishing retaliation.

### 6. Supplemental Filings

After LC filed its reply memorandum [Doc. No. 92], Aguillard requested a stay pending the resolution of a motion to compel [Doc. No. 93]. The stay was granted by the Court [Doc. No. 94]. The Magistrate Judge then ruled on the motion to compel [Doc. No. 99], the stay was lifted, and Aguillard filed a supplemental memorandum in opposition to the motion for partial summary judgment, along with additional affidavits [Doc. Nos. 105, 113, 114]. LC filed a reply to Aguillard's supplemental memorandum [Doc. No. 109].

Aguillard again argues his previously submitted assertions, primarily focusing on his claim that his complaints to SACSCOC constitute a "protected activity" under Title VII and the ADA. However, he again fails to reference or to cite any legal authority in support of his claim.

Aguillard repeats his arguments that the defamation petition's references to Aguillard's EEOC filings show retaliation, arguments which the Court addressed above. He further asserts that LC is not pursuing its defamation claim in state court, which, according to Aguillard, supports his claim that the defamation was filed in retaliation. LC responds that it is pursuing its state court action and attaches a memorandum in opposition to a motion to strike with 22 exhibits attached which it filed in the state court action on March 23, 2018.

The supplemental filings by Aguillard also fail to establish a prima facie case of retaliation and further fail to rebut LC's proof of a legitimate, non-retaliatory reason for its adverse action.

## III. CONCLUSION

For the reasons set forth above, LC's Motion for Partial Summary Judgment [Doc. No. 84] is **GRANTED**. Aguillard's claim that LC filed a defamation suit against him in the Ninth Judicial District Court in and for Rapides Parish, Louisiana, in retaliation for his filing a charge of discrimination and a whistleblower complaint against LC are **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA, this 26th day of August, 2019.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**