# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| JOE W. AGUILLARD | CIVIL ACTION NO. 1:17-CV-01671 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LOUISIANA COLLEGE | MAG. JUDGE MARK L. HORNSBY |

## RULING

Plaintiff Joe W. Aguillard ("Aguillard") sued his former employer, Louisiana College ("LC"), alleging, in part, that various alleged acts of LC give rise to a claim for intentional infliction of emotional distress ("IIED") [Doc. No. 1, ¶¶ 8-28; Doc. No. 58, ¶¶ 27A, 31A, 31B, and 33A]. Pending here is LC's Motion for Partial Summary Judgment [Doc. No. 103] seeking dismissal of Aguillard's IIED claim. Aguillard has filed an opposition [Doc. No. 120]. LC has filed a reply [Doc. No. 121].

For the following reasons, the Motion for Partial Summary Judgment [Doc. No. 103] is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Aguillard served as President of LC from January of 2005 to July of 2014. Thereafter, he served as "President Emeritus" of LC and as a fully tenured member of the faculty. [Doc. No. 1, ¶¶ 1-5]. LC employed an acting president to follow Aguillard for one year, and LC then hired Dr. Richard Brewer ("Brewer") as president. Brewer has held the job since April 2015.

LC terminated Aguillard's employment effective March 31, 2016. Following his termination, Aguillard filed a charge of discrimination with the EEOC and the Louisiana Commission on Human Rights, alleging that LC had discriminated against him because of

disability, religion, and in retaliation for opposing illegal practices in violation of the American with Disabilities Act, as amended, 42 U.S.C. §§ 12101-12213 ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"). He filed a second charge of retaliation/discrimination with the EEOC and set forth more fully his religious beliefs conflict with Brewer.[1] The EEOC issued a "Right to Sue" letter on both charges. [Id. at¶¶ 31-33].

Aguillard's Original Complaint, filed on December 27, 2017, invoked federal laws that prohibit discrimination on the grounds of religion, age, and disability. Aguillard also alleged that LC retaliated against him for complaining about and opposing unlawful discrimination.[2] Pertinent to his IIED claim, Aguillard's Original Complaint alleges a series of claimed improper acts over an 11-month period, beginning with the alleged May 3, 2015 "hiring" of Kyle Johnston, and ending with Aguillard's termination as of March 31, 2016. More specifically, Aguillard alleges the following:

> ¶ 8 – May 3, 2015 - LC hiring of Kyle Johnson who was allegedly one of the "Calvinists" who "didn't just want Dr. Aguillard gone, they wanted him dead."
>
> ¶ 9 – May 20, 2015 - Aguillard allegedly told by Dr. Brewer that Aguillard could no longer be President Emeritus and could not contact LC vice-presidents or LC donors.
>
> ¶¶ 10/11 - After May 6, 2015 - Aguillard is allegedly isolated and not allowed to participate in customary faculty functions; Dr. Brewer allegedly refuses to communicate with Aguillard.

---

1 Aguillard alleges that Brewer is a "Calvinist"; whereas, Aguillard is not.

2 On September 19, 2018, this Court granted partial summary judgment for LC and dismissed Aguillard's Title VII religious discrimination and retaliation claims on the grounds the college falls within a religious organization exemption. [Doc. No. 30]. On April 4, 2019, this Court further granted summary judgment for LC and dismissed Aguillard's claims of disability discrimination, disability-based retaliation, and disability-based hostile work environment. [Doc. No. 70]. On June 13, 2019, this Court granted summary judgment for LC and dismissed Aguillard's claims arising under the Clery Act, including his Clery Act retaliation claim. [Doc. No. 89]. On August 26, 2019, this Court granted summary judgment for LC and dismissed Aguillard's claim that LC retaliated against him by filing a defamation suit in state court [Doc. No. 116].

¶ 13 - August 18, 2015 - LC publishes recruitment flier which allegedly features pictures of Kyle Johnson and Calvinists who had allegedly bullied and threatened Aguillard.

¶¶ 14 through 18 - September 28, 2015 - Aguillard meets with Don Benton Connor (hired by LC) who allegedly threatens Aguillard, takes Aguillard's computers, slams computer top on Aguillard's hand – resulting in Aguillard's three-week hospital stay for trauma.

¶¶ 17; 19 – After September 28, 2015 - Aguillard's computers allegedly "hacked," and Aguillard allegedly stalked and followed on orders of Dr. Brewer.

¶ 20 – December 2, 2015 - Dr. Brewer allegedly meets with Aguillard's supervisor, supposedly to obtain statements from supervisor that Aguillard could not perform his job due to illness; supervisor allegedly refuses and is allegedly fired.

¶¶ 21/22- January 2016 - Aguillard notified of dismissal proceedings and is placed on Administrative leave.

¶ 27 - February 17, 2016 - Aguillard allegedly locked out of his office and "denied access to ... his property stored in his office."

¶ 28 – February 23, 2016 hearing at which Faculty Affairs Advisory Committee ("FAAC") recommends terminating Aguillard's employment, and Aguillard's appeal to Board of Trustees Executive Committee is unsuccessful; Aguillard terminated as of March 31, 2016.

On November 13, 2018, Aguillard filed a motion for leave to file his First Amended Complaint [Doc. No. 32], and on March 1, 2019, the First Amended Complaint was filed [Doc. No. 58].

Pertinent to Aguillard's IIED claim are Paragraphs 27A, 31A, 31B, and 33A of the First Amended Complaint, which allege:

### 27A

Louisiana College physically seized and took possession of Plaintiff's movable property located in Plaintiff's office on or about February 17, 2016, including Plaintiff's personal belongings and confidential communications and records, including Plaintiff's

3

medical records, and Louisiana College returned portions of Plaintiff's property on January 20, 2017, November 10, 2017, and May 4, 2018. At the partial distribution on January 20, 2017, Plaintiff suffered a major PTSD event and his blood pressure reached over 200 as the result of the presence of a man illegally armed with a pistol during the time Plaintiff was inventorying and cataloging his property. On the advice of the Plaintiff's attorney, the District Attorney in and for Rapides Parish and his doctor, Plaintiff hired Kingdom Authority as a body guard. Plaintiff did not go on campus to personally retrieve his property on November 10, 2017, but rather sent his personal representative to received Plaintiff's property. Louisiana College has never returned all of Plaintiff's movable and personal property that it originally seized and took from Plaintiff's office.

31A

On or about May 25, 2017, and in retaliation against Plaintiff for filing a "Charge of Discrimination" against Louisiana College and for filing a "Whistleblower" Complaint against Louisiana College, Louisiana College, Dr. Richard B. Brewer, and Dr. Cheryl Clark jointly filed a defamation suit against Plaintiff in the Nineth [sic] Judicial District Court in and for Rapides Parish, Louisiana, which remains pending.

31B

Louisiana College failed to report numerous events or occurrences which were required to have been reported by it pursuant to the Clery Act, 20 U.S.C.A.§1092(f)(1)(F)(1), and then retaliated against Plaintiff for filing "whistleblower" complaints with respect thereto in violation of 79 FR 62783(m) [Oct. 20, 2014].

33A

Louisiana College's aforesaid conduct and treatment of Plaintiff was extreme and outragous and the emotional distress suffered by Plaintiff as a result of Defendant's aforesaid conduct and treatment was severe. Louisiana College knew and intended that by its conduct and treatment of Plaintiff would cause Plaintiff to sustain severe emotional distress or that severe emotional distress would result from its conduct and treatment of Plaintiff. Accordingly, Plaintiff is entitled to recover damages from Louisiana College for its intentional infliction of emotional distress upon Plaintiff.

[Doc. 58, ¶¶ 27A, 31A, 31B, and 33A].

LC argues in its Motion for Partial Summary Judgment that Aguillard's IIED claims are prescribed. LC further argues that many of the acts alleged by Aguillard do not qualify as IIED claims, and, that Aguillard has no evidence LC intentionally caused him severe mental distress or was substantially certain severe mental distress would result from the acts Aguillard asserts. Aguillard responds that the acts he alleged do qualify as an IIED claim, that LC intentionally caused him severe mental distress, and that he timely asserted his IIED claim. The motion is fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.

*Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

### B. Prescription

Under *Erie Railroad Co. v. Tompkins*, 58 S.Ct. 817 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). State statutes of limitations, as well as "integral part[s]" of the statutes of limitations like tolling and equitable estoppel, are treated as substantive for the purposes of the *Erie* doctrine. *Guaranty Trust v. York*, 65 S.Ct. 1464, 1470–71 (1945); *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (quoting *Walker v. Armco Steel Corp.*, 100 S.Ct. 1978 (1980)).

In Louisiana, statutes of limitations are known as prescriptive periods. "Generally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it; thus, of two possible constructions, that which favors maintaining, as opposed to barring an action, should be adopted." *Wells v. Zadeck*, 2011-1232 (La. 3/30/12); 89 So. 3d 1145, 1149 (citing *Carter v. Haygood*, 04–0646 (La. 1/19/05); 892 So. 2d 1261, 1268; *Bailey v. Khoury*, 04–0620 (La. 1/20/05); 891 So. 2d 1268). Further, ordinarily, the party raising

6

the defense of prescription bears the burden of proof. *Wells*, 89 So. 3d at 1149 (citing *Campo v. Correa*, 01–2707, p. 7 (La. 6/21/02); 828 So.2d 502, 508). "However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed." *Wells*, 89 So. 3d at 1149 (citing *Campo*, 01–2707 at p. 7; 828 So.2d at 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1386 (La. 1993)).

Louisiana Civil Code article 3492 states that "[d]elictual actions are subject to a liberative prescription of one year," and "[t]his prescription commences to run from the day injury or damage is sustained." LA. CIV. CODE art. 3492. Article 3467 further provides: "Prescription runs against all persons unless exception is established by legislation." LA. CIV. CODE art. 3467.

"IIED is a delictual claim subject to a one-year prescription." *Alexander v. Nixon*, No. 15-2300, 2015 WL9997250, *7 (W.D. La. Dec. 15, 2015). *See* LA. CIV. CODE art. 3492 ("Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.").

An exception to the one-year rule is the two-year rule for delictual actions arising from an act defined as a crime of violence. As stated in *Bradley v. P N K (Lake Charles)*, No. 2:18-1004, 2018 WL7107607 (W.D. La. Dec. 28, 2018), "delictual actions arising from an act defined as a crime of violence under Louisiana law are subject to a two-year prescriptive period. La. Civ. Code art. 3493.10." (*Id.*, *2). "Crimes of violence" are defined in LA. REV. STAT. 14:2(B), and include "Aggravated battery," "Aggravated assault" and "Armed robbery." (*See* LA. REV. STAT. 14:2(B)(5) (7) and (21).

C. **Analysis**

1. **Alleged IIED Events in Original Complaint**

The parties agree that Aguillard's claim for the intentional infliction of emotional distress must be treated as having been judicially asserted on December 27, 2017, when Aguillard filed his Original Complaint [Doc. No. 1]. LC asserts that all of the acts alleged by Aguillard in his IIED claim in the Original Complaint, beginning with the alleged May 3, 2015 "hiring" of Kyle Johnston, and ending with Aguillard's termination as of March 31, 2016, are subject to the one-year period for prescription, and therefore prescribed prior to December 27, 2017. The only possible exception, according to LC, is the alleged September 28, 2015 Don Benton Connor incident, where Connor allegedly threatened Aguillard, took his computer, and slammed the top of the computer on Aguillard's hand. LC contends this allegation, even if was subject to the two-year period for prescription provided by article 3493.10, would also have prescribed prior to December 27, 2017. Thus, all alleged IIED events in the Original Complaint have prescribed on their fact, according to LC.

Aguillard opposes the motion, arguing that some of the alleged IIED events constitute a breach of contract and are, therefore, subject to a ten-year prescription; and, that the alleged IIED event for taking his personal property is imprescriptible.

a. **IIED as a breach of contract claim**

Aguillard argues that he has pleaded multiple contractual violations of his Employment Agreement that are governed by different periods of prescription as part of his IIED claim. LC responds that Aguillard did not state in either his Original Complaint or his Amended Complaint that he was alleging breach of contract as a cause of action. Additionally, he cites no jurisprudence holding IIED to be a breach of contract claim.

The Court agrees with LC. Aguillard has not shown that the 10-year prescriptive period provided by La. Civil Code art. 3494 for breach of contract claims would apply to his IIED claim. Therefore, this argument has no merit.

### b. IIED claim for recovery of property

Aguillard argues that, as part of his IIED claim, he is asserting a claim for the recovery of his computers and office furnishings which have not prescribed because "the revendication action for the recovery of movable property is imprescriptible." [Doc. No. 120-35, p. 25]. LC responds that neither his Original Complaint nor his Amended Complaint include a request for the return of any property; instead, he seeks money damages for the alleged improper "taking" of his property on February 17, 2016, which was more than a year prior to the filing of his Original Complaint.

The Court finds that Aguillard's argument is irrelevant to his IIED claim, which he has alleged arises from the improper taking of his personal property on February 17, 2016. Assuming arguendo that his right to sue for the return of his property has not prescribed, Aguillard has failed to show why prescription has not run as to his IIED claim seeking damages for the alleged improper taking. Therefore, this argument has no merit.

### 2. Alleged IIED Events in Amended Complaint

### a. Filing of the Defamation Suit

Aguillard argues that the filing of the defamation suit in state court against him by LC, Dr. Brewer, and Dr. Cheryl Clark on May 25, 2017, was an IIED event which occurred within one year of the filing of his Original Complaint. LC responds that this Court previously dismissed Aguillard's defamation retaliation claim, after finding that LC had provided proof of a legitimate non-retaliatory reason for the filing of the defamation suit, that being the need to protect LC's SACSCOC accreditation and its reputation [Doc. No. 116, p. 12], and, this Court further found

9

that Aguillard had offered nothing from which the jury may infer that retaliation was the real motive for the filing of the defamation suit, other than his own conclusory statements [*Id*.].

The Court agrees with LC. Aguillard repeats the same arguments he made in support of his defamation retaliation claim, yet he has failed to present evidence showing any "intent" to cause emotional distress through the filing of the defamation action, other than his own conclusory statements. Therefore, this argument has no merit.

### b. Alleged IIED event of January 20, 2017

The only discernible remaining IIED event alleged by Aguillard in his Amended Complaint, is that, on January 20, 2017, "Plaintiff suffered a major PTSD event and his blood pressure reached over 200 as the result of the presence of a man illegally armed with a pistol during the time Plaintiff was inventorying and cataloging his property." [Doc. No. 58, ¶ 27A]. Aguillard's opposition memorandum does not refer to this allegation, but in his Response to LC's Statement of Undisputed Facts he states, "Mr. Charles Robertson was present in violation of Louisiana State Law packing a firearm on his right hip next to a badge." [Doc. No. 120-36, ¶ 9].

To the extent Aguillard may be contending that his allegation that the presence of a man "illegally armed with a pistol" on January 20, 2017, while he was present on LC's campus to claim his personal property, was an IIED event that occurred less than a year prior to the filing of his Original Complaint, the Court notes that this allegation is not supported by any summary judgment evidence. It is not referred to in Aguillard's Affidavit offered in opposition to the motion. [Doc. No. 120-1]. Further, it is contradicted by Brewer's Affidavit [Doc. No. 103-2] which states that LC's then Director of Campus Security Charles Robertson was present on January 20, 2017, as was Aguillard's own armed security guard from Kingdom Security, LLC, and that he is not aware of any person having an illegal weapon of any nature being present.

Therefore, there is no summary judgment evidence that there was a "man illegally armed with a pistol" present, and, in fact, the only summary judgment evidence submitted contradicts that allegation. Thus, this argument, even assuming arguendo it has been made by Aguillard, has no merit.

### 3. Continuing Tort

Finally, Aguillard argues that each alleged IIED incident should not be analyzed as a separate and independent claim or cause of action, but should instead be analyzed as one continuing event, citing *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992). As noted by the court in *Whitten v. State Farm Mut. Auto. Ins. Co.*, No. 01-1915, 2002 WL31395892 (W.D. La. Sept. 11, 2002):

> In *Bustamento*, the Louisiana Supreme Court held that "in an action for intentional inflection of emotional distress ... when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated."

at *5 (quoting *Bustamento*, 607 So.2d at 543).

Even assuming arguendo there has been a showing here of purported IIED acts "of the same nature" on an almost "daily basis," *Bustamento* would not be applicable. Each of the acts alleged in Aguillard's Original Complaint occurred between May 3, 2015 and March 31, 2016 [Doc. No. 1, ¶¶8 - 28]; therefore, each claim as to each individual act prescribed prior to December 27, 2017.

Further, with regard to the two alleged IIED events in Aguillard's Amended Complaint, the Court has determined above that the filing of the defamation suit was not an IIED event and that there is no summary judgment evidence showing that anyone was "illegally armed with a

pistol" on January 20, 2017. Therefore, there was no continuing course of conduct within the year prior to the filing of the Original Complaint on December 27, 2017.

### III. CONCLUSION

For the above reasons, the Court finds that the IIED claim asserted by Aguillard in his Original Complaint and in his Amended Complaint is prescribed and thus time-barred. Having made this determination, the Court need not address LC's additional arguments for the dismissal of Aguillard's IIED claim. Accordingly, the Court finds that LC's Motion for Partial Summary Judgment [Doc. No. 103] should be GRANTED, and Aguillard's intentional infliction of emotional distress claim should be DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 27th day of September, 2019.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**